UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | |
| | : | |
| AMERICAN BANKNOTE CORPORATION, | : | Chapter 11 |
| | : | Case No. 99 B 11577 (PCB) |
| | : | |
| Debtor. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SECOND AMENDED REORGANIZATION PLAN OF AMERICAN BANKNOTE CORPORATION

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP
Kayalyn A. Marafioti
Frederick D. Morris
Four Times Square
New York, New York  10036-6522
(212) 735-3000

Attorneys for American Banknote Corporation

Dated: New York, New York
        September 12, 2000

**TABLE OF CONTENTS**

TABLE OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-v

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-1

ARTICLE I

DEFINITIONS, RULES OF INTERPRETATION,
AND COMPUTATION OF TIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-1
A.    Scope Of Definitions; Rules Of Construction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-1
B.    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-1
C.    Rules Of Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-13
D.    Computation Of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14

ARTICLE II

CLASSIFICATION OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
B.    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            1.    Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
C.    Unimpaired Classes Of Claims  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            1.    Class 1: *Other Priority Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            2.    Class 2: *Other Secured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            3.    Class 3: *General Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-14
            4.    Class 4: *11⅝% Senior Note Claims*  . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
D.    Impaired Classes Of Claims Against And Interests In ABN . . . . . . . . . . . . . . . . . . . PLAN-15
            1.    Class 5: *10⅞% Senior Note Claims*  . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
            2.    Class 6: *11¼% Senior Subordinated Note Claims* . . . . . . . . . . . . . . PLAN-15
            3.    Class 7: *Convertible Subordinated Note Claims*  . . . . . . . . . . . . . . . PLAN-15
            4.    Class 8: *Unsurrendered Preferred Stock Claims* . . . . . . . . . . . . . . . PLAN-15
            5.    Class 9: *Preferred Stock Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
            6.    Class 10: *Common Stock Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
            7.    Class 11: *Securities Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-15
            8.    Class 12: *Warrants Interests* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16

ARTICLE III

TREATMENT OF CLAIMS AND INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
A.    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
            1.    Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
            2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-16
B.    Unimpaired Classes Of Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
            1.    Class 1: *Other Priority Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
            2.    Class 2: *Other Secured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
            3.    Class 3: *General Unsecured Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
            4.    Class 4: *11⅝% Senior Note Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-17
C.    Impaired Classes Of Claims And Interests  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-18
            1.    Class 5: *10⅞% Senior Note Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-18
            On or before the Consummation Date, Reorganized ABN and the  . . . . . . . . . PLAN-18

|  | 2. | Class 6: *11¼% Senior Subordinated Note Claims* ................. PLAN-18 |
|  | 3. | Class 7: *Convertible Subordinated Note Claims* ................... PLAN-19 |
|  | 4. | Class 8: *Unsurrendered Preferred Stock Claims* .................. PLAN-20 |
|  | 5. | Class 9: *Preferred Stock Interests* ............................. PLAN-20 |
|  | 6. | Class 10: *Common Stock Interests* ............................ PLAN-21 |
|  | 7. | Class 11: *Securities Claims* ................................. PLAN-21 |
|  | 8. | Class 12: *Warrants Interests* ................................ PLAN-23 |
| D. | Special Provision Regarding Unimpaired Claims ............................... PLAN-23 |
| E. | Accrual Of Post-petition Interest ........................................ PLAN-24 |

ARTICLE IV

MEANS FOR IMPLEMENTATION OF THE PLAN ............................... PLAN-24
| A. | Continued Corporate Existence ........................................ PLAN-24 |
| B. | Corporate Action ................................................... PLAN-24 |
|  | 1. | Cancellation Of Existing Securities And Agreements ............... PLAN-24 |
| C. | Restructuring Transactions ............................................ PLAN-25 |
|  | 1. | New Securities ................................................ PLAN-25 |
|  | 2. | Registration Rights ............................................ PLAN-26 |
|  | 3. | Rights Offering ............................................... PLAN-26 |
|  | 4. | Securities Claims Reserve ...................................... PLAN-26 |
| D. | Directors And Officers .............................................. PLAN-27 |
| E. | Revesting Of Assets ................................................ PLAN-27 |
| F. | Preservation Of Rights Of Action ..................................... PLAN-28 |
| G. | Effectuating Documents; Further Transactions ........................... PLAN-28 |
| H. | Exemption From Certain Transfer Taxes ................................. PLAN-28 |

ARTICLE V

ACCEPTANCE OR REJECTION OF THE PLAN ............................... PLAN-28
| A. | Classes Entitled To Vote ............................................. PLAN-28 |
| B. | Acceptance By Impaired Classes ....................................... PLAN-29 |
| C. | Cramdown ........................................................ PLAN-29 |

ARTICLE VI

SECURITIES TO BE ISSUED IN CONNECTION WITH THE PLAN
....................................................................... PLAN-29

ARTICLE VII

PROVISIONS GOVERNING DISTRIBUTIONS ................................ PLAN-29
| A. | Distributions For Claims Allowed As Of The Consummation Date ............... PLAN-29 |
| B. | Disbursing Agent ................................................... PLAN-30 |
| C. | Surrender Of Securities Or Instruments ................................. PLAN-30 |
| D. | Instructions To Disbursing Agent ...................................... PLAN-31 |
| E. | Services Of Indenture Trustees, Agents, And Servicers ..................... PLAN-31 |

F.      Record Date For Distributions To Holders Of 10⅜% Senior Notes, 11⅝% Senior Notes, 11¼% Senior Subordinated Notes, Convertible Subordinated Notes,  Preferred Stock, And Common Stock  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-31
G.      Means Of Cash Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-31
H.      Calculation Of Distribution Amounts Of New Securities . . . . . . . . . . . . . . . . . . . . . PLAN-32
I.      Delivery Of Distributions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-32
J.      Fractional Dollars; De Minimis Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-33
K.      Withholding And Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-33
L.      Setoffs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-33

ARTICLE VIII

TREATMENT OF EXECUTORY CONTRACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-33
A.      Assumed Contracts And Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-33
B.      Payments Related To Assumption Of Contracts And Leases . . . . . . . . . . . . . . . . . . . PLAN-34
C.      Rejected Contracts And Leases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-34
D.      Bar To Rejection Damages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-34

E.      Certain Employment Contracts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-35
F.      Compensation And Benefit Plans  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-35

ARTICLE IX

PROCEDURES FOR RESOLVING DISPUTED,CONTINGENT, AND UNLIQUIDATED CLAIMS
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-36
A.      Objection Deadline; Prosecution Of Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-36
B.      No Distributions Pending Allowance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-36
C.      Distribution Reserve  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-36
D.      Distributions After Allowance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-37

ARTICLE X

CONDITIONS PRECEDENT TO CONFIRMATION ANDCONSUMMATION OF THE PLAN
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-37
A.      Conditions To Confirmation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-37
B.      Conditions To Consummation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-38
C.      Waiver Of Conditions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-40

ARTICLE XI

MODIFICATIONS AND AMENDMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-40

ARTICLE XII

RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-41

ARTICLE XIII

COMPROMISES AND SETTLEMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-42

A.      Settlement Between ABN And ABNH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-42

B.      Settlement Among ABN, ABNH, And Parties To The ABN And ABNH Securities Actions
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-42

C.      Settlement Between Equity Committee And Plaintiffs In ABN And ABNH Securities Actions
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-43

D.      Settlement Between Consultant And Equity Committee . . . . . . . . . . . . . . . . . . . . . . . PLAN-43

ARTICLE XIV

MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-44
A.      Bar Dates For Certain Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-44
        1.      Administrative Claims; Substantial Contribution Claims . . . . . . . . . . . . PLAN-44
        2.      Professional Fee Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-44
        3.      Other Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-44
B.      Payment Of Statutory Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-45
C.      Severability Of Plan Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-45
D.      Successors And Assigns . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-45
E.      Discharge Of The Debtor And Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-45
F.      Debtor Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-46
G.      Other Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-46
H.      Waiver Of Enforcement Of Subordination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-47
I.      Committees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-47
J.      Binding Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-47
K.      Revocation, Withdrawal, Or Non-Consummation . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-47
L.      Plan Supplement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-48
M.      Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-48
N.      Indemnification Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-48
O.      Prepayment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-49
P.      Term Of Injunctions Or Stays . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-49
Q.      Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . PLAN-50

# TABLE OF EXHIBITS

| Exhibit | Name |
|---|---|
| A | Description Of New Common Stock |
| B | Consultant Settlement Agreement |
| C | Rights Offering Procedures |
| D | Memorandum Of Understanding Among ABN, ABNH, And Parties To ABN And ABNH Securities Actions |
| E | Memorandum Of Understanding Between Plaintiffs In ABN And ABNH Securities Actions And Equity Committee |
| F | Term Sheet Between ABN And ABNH |

The following exhibits will be included in the Plan Supplement to be filed with the Bankruptcy Court seven days prior to the date set for the hearing on Confirmation.

| | |
|---|---|
| G | Reorganized American Banknote Corporation Certificate Of Incorporation And By-laws |
| H | New Warrant Agreement |
| I | Management Incentive Plan |
| J | Consultant Option Plan |
| K | Amendment to 10 3/8% Senior Notes Indenture |
| L | Rejected Executory Contracts And Leases |
| M | Settlement Agreement Between ABN And ABNH |
| N | Registration Rights Agreement |
| O | Settlement Agreement Among ABN, ABNH, And Parties To ABN And ABNH Securities Actions |
| P | Equity Option Agreement |

# INTRODUCTION

American Banknote Corporation ("ABN" or the "Debtor") proposes the following reorganization plan (the "Plan") for the resolution of its outstanding creditor Claims and equity Interests. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of the Debtor's history, businesses, properties, results of operations, projections for future operations, risk factors, a summary and analysis of the Plan, and certain related matters, including the New Securities to be issued under the Plan, which is a central feature of the Plan. The Debtor is the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

All holders of Claims and all holders of Interests are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019 and those restrictions on modifications set forth in Article XI of this Plan, the Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation with the consent of the Noteholders' Committee.

# ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION,
## AND COMPUTATION OF TIME

### A.    Scope Of Definitions; Rules Of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B.    Definitions

1.1    "ABN" means American Banknote Corporation, a Delaware corporation having its principal place of business in New York City, New York and any predecessor to ABN, including, without limitation, ABN as debtor-in-possession and as reorganized hereunder, as applicable.

1.2    "ABN D&O Policy" means the directors, officers, and corporate liability insurance policy number 485-19-96 issued by National Union Fire Insurance Company of Pittsburgh, Pa., an affiliate of AIG, in the name of ABN.

1.3    "ABNH" means American Bank Note Holographics, Inc., a former subsidiary of ABN.

1.4    "ABN Securities Action" means the consolidated purported class action captioned *In re American Banknote Corporation Securities Litigation*, No. 99 Civ. 0661(CM) (S.D.N.Y.), in which ABN is a named defendant.

1.5    "ABNH Securities Action" means the consolidated purported class action captioned *In re American Bank Note Holographics, Inc. Securities Litigation*, No. 99 Civ. 0412(CM) (S.D.N.Y.), in which ABN is a named defendant.

1.6    "ABN Securities Claims" means any and all Claims for fraud, misrepresentation, rescission, reimbursement, contribution, indemnification, or damages arising from, under, or in connection with (i) all agreements entered into by ABN in connection with the issuance of the Common Stock, the Preferred Stock, or the Warrants or (ii) the purchase or sale of the Common Stock, the Preferred Stock, or the Warrants. ABN Securities Claims include, without limitation, any and all Claims asserted or that could have been asserted in the ABN Securities Action.

1.7    "ABNH Securities Claims" means any and all Claims for fraud, misrepresentation, rescission, reimbursement, contribution, indemnification, or damages arising from, under, or in connection with (i) all agreements entered into by ABN in connection with the issuance of any capital stock of ABNH or (ii) the purchase or sale of the common stock of ABNH. ABNH Securities Claims include, without limitation, any and all Claims asserted or that could have been asserted in the ABNH Securities Action.

1.8    "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (i) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the businesses of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Case, (ii) Professional Fees, (iii) all fees and charges assessed against the Estate under Chapter 123 of title 28, United States Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

1.9    "Allowed Claim" means a Claim or any portion thereof (i) as to which no objection to allowance or request for estimation has been interposed on or before the date provided for herein or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, (ii) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (iii) that has been allowed by a Final Order, (iv) as to which the liability of the Debtor, and the amount thereof, are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court, or (v) that is expressly allowed in a liquidated amount in the Plan; *provided, however,* that with respect to an Administrative Claim, "Allowed Claim" means an Administrative Claim as to which a timely request for payment has been made in accordance with Article XIV.A.1 of this Plan (if such written request is required) or other Administrative Claim, in each case as to which the Debtor (a) has not interposed a timely objection or (b) has interposed a timely objection and such objection has been settled, waived through payment, or withdrawn, or has been denied by a Final Order.

1.10    "Allowed" means, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.11    "Allowed Class . . . Claim" means an Allowed Claim in the particular Class described.

1.12    "Allowed Class . . . Interest" means an Interest in the particular Class described (i) that has been allowed by a Final Order, (ii) for which (a) no objection to allowance has been filed within the periods of limitation set forth herein or such other periods fixed by the Bankruptcy Code, the Bankruptcy Rules or by any Final Order of the Bankruptcy Court or (b) any objection to allowance has been settled or withdrawn, or (iii) that is expressly allowed in the Plan.

1.13    "August 2002 Convertible Subordinated Notes" means the zero coupon convertible subordinated notes due August 2, 2002 of ABN issued and outstanding under the August 2002 Convertible Subordinated Debenture.

1.14    "August 2002 Convertible Subordinated Debenture" means the debenture, dated as of July 24, 1997, executed by ABN, pursuant to which $5 million in aggregate principal amount of the August 2002 Convertible Subordinated Notes was issued.

1.15    "Ballots" means each of the ballot forms distributed with the Disclosure Statement or the Summary Disclosure Statement to holders of Impaired Claims and Impaired Interests entitled to vote under Article II hereof in connection with the solicitation of acceptances of the Plan.

1.16    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101- 1330, as now in effect or hereafter amended.

1.17    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York or such other court as may have jurisdiction over the Chapter 11 Case.

1.18    "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

1.19    "Bar Date" means the date, if any, designated by the Bankruptcy Court as the last date for filing proofs of Claim (including Administrative Claims other than Professional Fee Claims) against or Interests in the Debtor.

1.20    "Benefit Plans" means all benefit plans, policies, and programs sponsored by ABN, including, without limitation, all savings plans, health plans, disability plans, life insurance plans, deferred compensation plans, retirement plans, severance plans, and executive incentive plans.

1.21    "Business Day" means each Monday, Tuesday, Wednesday, Thursday, and Friday which is not a day on which banking institutions in New York, New York are authorized or obligated by law or executive order to close.

1.22    "Case Interest Rate" means the federal judgment rate provided in 28 U.S.C. § 1961 in effect on the Petition Date compounded annually on each anniversary of the Petition Date.

1.23    "Cash" means legal tender of the United States or equivalents thereof.

1.24    "Chapter 11 Case" means the Chapter 11 case of ABN.

1.25    "Claim" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

1.26    "Class" means a category of holders of Claims or Interests, as described in Article II hereof.

1.27    "Class Action Settlements" means, collectively, the settlements of the ABN Securities Action and the ABNH Securities Action.

1.28    "Collateral" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

1.29    "Common Stock" means common stock, par value $.01 per share, of ABN , authorized as of the Petition Date.

1.30    "Common Stock Interest" means any Interest from or under the Common Stock.

1.31    "Confirmation" means entry by the Bankruptcy Court of the Confirmation Order.

1.32    "Confirmation Date" means the date of entry of the Confirmation Order by the clerk of the Bankruptcy Court.

1.33    "Confirmation Hearing" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code.

1.34    "Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan.

1.35    "Consultant" means Morris Weissman.

1.36    "Consultant Options" means the options to be issued by Reorganized ABN to the Consultant to purchase New Common Stock pursuant to the provisions of the Consultant Option Plan.

1.37    "Consultant Option Plan" means the consultant option plan pursuant to which the Consultant Options will be issued, substantially in the form of the option plan to be included in the Plan Supplement, to be adopted by ABN and Reorganized ABN pursuant to Article IV.C hereof.

1.38    "Consultant Settlement Agreement" means that certain consulting, non-competition, and termination agreement, dated as of March 13, 2000, among the Consultant, ABN, and American Banknote Company, as amended by amendment dated June 26, 2000.

1.39    "Consummation Date" means the Business Day on which all conditions to the consummation of the Plan as set forth in Article X.B hereof have been satisfied or waived as provided in Article X.C hereof.

1.40 "Convertible Subordinated Notes" means the August 2002 Convertible Subordinated Notes and the November 2002 Convertible Subordinated Notes.

1.41 "Convertible Subordinated Note Claim" means a Claim of a holder of Convertible Subordinated Notes arising from or under the Convertible Subordinated Notes.

1.42 "Creditor" means any Person who holds a Claim against the Debtor.

1.43 "Creditors' Committee" means the committee of unsecured creditors, if any, appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Case.

1.44 "Cumulative Preferred Stock" means the preferred stock, par value $.01 per share, issued by United States Banknote Corporation, the predecessor of ABN, which was redeemed by United States Banknote Corporation on or about June 24, 1992.

1.45 "Cure" means the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

1.46 "Debtor" means ABN including in its capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

1.47 "Disbursing Agent" means Reorganized ABN or any party designated by Reorganized ABN, in its sole discretion, to serve as a disbursing agent under the Plan.

1.48 "Disclosure Statement" means the written amended disclosure statement and/or the summary plan and disclosure statement, as applicable, that relates to the Plan, dated September 12, 2000, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

1.49 "Disputed Claim" or "Disputed Interest" means, as applicable, any Claim or Interest not otherwise Allowed or paid pursuant to the Plan or an order of the Bankruptcy Court (i) which has been or hereafter is listed on the Schedules as unliquidated, contingent, or disputed, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, (ii) proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of Claim or Interest was not timely or properly filed, (iii) proof of which was timely and properly filed and which has been or hereafter is listed on the Schedules as unliquidated, disputed, or contingent, (iv) that is disputed in accordance with the provisions of this Plan, or (v) as to which the Debtor has interposed a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation, or dispute has not been withdrawn or determined by a Final Order; *provided, however,* that for purposes of determining whether a particular Claim or Interest is a Disputed Claim or a Disputed Interest prior to the expiration of any period of limitation fixed for the interposition by

the Debtor of objections to the allowance of Claims or Interests, any Claim or Interest that is not identified by the Debtor as an Allowed Claim shall be deemed a Disputed Claim or Disputed Interest.

1.50    "Distribution Date" means the date, occurring as soon as practicable after the Consummation Date, upon which distributions are made by Reorganized ABN or the Disbursing Agent to holders of Allowed Administrative Claims, Priority Tax Claims, Class 1 Other Priority Claims, Class 4 11⅝% Senior Note Claims, Class 5 10⅜% Senior Note Claims, Class 6 11¼% Senior Subordinated Note Claims, Class 7 Convertible Subordinated Note Claims, Class 8 Unsurrendered Preferred Stock Claims, Class 9 Preferred Stock Interests, Class 10 Common Stock Interests, and Class 11 Securities Claims.

1.51    "Distribution Record Date" means the record date for purposes of making distributions under the Plan to holders of Allowed Claims and Allowed Interests, which date shall be the seventh (7th) Business Day following the Confirmation Date.

1.52    "Distribution Reserve" means the reserve, if any, established and maintained by the Reorganized Debtor, into which the Reorganized Debtor shall deposit the amount of Cash, New Common Stock, New Warrants, Equity Options, or other property that would have been distributed by the Reorganized Debtor on the Distribution Date to holders of (i) Disputed Claims (other than Opt-Out ABN Securities Claims and Opt-Out ABNH Securities Claims) or Disputed Interests, (ii) contingent liquidated Claims, if such Claims had been undisputed or noncontingent Claims on the Distribution Date, pending (a) the allowance of such Claims, (b) the estimation of such Claims for purposes of allowance, or (c) the realization of the contingencies, and (iii) unliquidated Claims, as if such Claims had been liquidated on the Distribution Date, such amount to be estimated by the Bankruptcy Court or agreed upon by ABN and the holders thereof as sufficient to satisfy such unliquidated Claim upon such Claim's (a) allowance, (b) estimation for purposes of allowance, or (c) liquidation, pending the occurrence of such estimation or liquidation.

1.53    "District Court" means the United States District Court for the Southern District of New York or such other court as may have jurisdiction over the ABN Securities Action and the ABNH Securities Action.

1.54    "District Court Claims Administrator" means the firm that shall administer the distributions under the Class Action Settlements pursuant to the terms of the Class Action Settlements.

1.55    "EBITDA" means earnings before interest, taxes, depreciation, and amortization.

1.56    "11⅝% Senior Note Claim" means a Claim of a holder of 11⅝% Senior Notes arising from or under the 11⅝% Senior Notes.

1.57    "11⅝% Senior Notes" means the 11⅝% Senior Notes due August 1, 2002 of ABN, issued and outstanding under the 11⅝% Senior Notes Indenture.

1.58    "11⅝% Senior Notes Indenture" means the indenture, dated as of May 1, 1994, among ABN and The First National Bank of Boston, as indenture trustee, as modified by the First Supplemental Indenture, dated as of October 8, 1997, among ABN and State Street Bank & Trust Company, as successor indenture trustee, pursuant to which the 11⅝% Senior Notes were issued.

1.59 "11¼% Senior Subordinated Note Claim" means a Claim of a holder of 11¼% Senior Subordinated Notes arising from or under the 11¼% Senior Subordinated Notes.

1.60 "11¼% Senior Subordinated Notes" means the 11¼% Senior Subordinated Notes due 2007 of ABN issued and outstanding under the 11¼% Senior Subordinated Notes Indenture.

1.61 "11¼% Senior Subordinated Notes Indenture" means the indenture, dated as of December 12, 1997, among ABN, the Subsidiary Guarantors, and The Bank of New York, as indenture trustee, pursuant to which the 11¼% Senior Subordinated Notes were issued.

1.62 "Equity Committee" means the official committee of equity security holders appointed pursuant to section 1102(a) and (b) of the Bankruptcy Code in the Chapter 11 Case.

1.63 "Equity Options" means options to purchase up to 1.28% of the outstanding shares of New Common Stock on a fully-diluted basis pursuant to the terms of the Equity Options Agreement.

1.64 "Equity Options Agreement" means the equity options agreement pursuant to which the Equity Options will be issued, substantially in the form of the agreement to be included in the Plan Supplement, to be adopted by ABN or Reorganized ABN pursuant to Article IV.C hereof

1.65 "Equity Reserve" means the reserve containing 915,396 shares of New Common Stock (representing approximately 7.7% of the New Common Stock, subject to dilution by the New Warrants, the Rights, the Management Incentive Options, the Equity Options and the Consultant Options) and 622,481 New Warrants (consisting of all of the New Warrants, and representing the right to purchase approximately 5% of the New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options), which shall be distributed to the holders of Preferred Stock Interests, Common Stock Interests, and the holders of Securities Claims on the Distribution Date pursuant to the terms of this Plan.

1.66 "Estate" means the estate of ABN in the Chapter 11 Case created pursuant to section 541 of the Bankruptcy Code.

1.67 "Existing Securities" means, collectively, the 10⅝% Senior Notes, 11¼% Senior Subordinated Notes, Convertible Subordinated Notes, Series A Preferred Stock, Series B Preferred Stock, Unsurrendered Preferred Stock, Common Stock, and Warrants.

1.68 "Face Amount" means (i) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, (ii) when used in reference to an unliquidated Claim, the amount of the Claim as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, and (iii) when used in reference to an Allowed Claim, the allowed amount of such Claim.

1.69 "Final Order" means an order or judgment, the operation or effect of which has not been stayed, reversed, or amended and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

1.70    "General Unsecured Claim" means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Other Secured Claim, 10⅝% Senior Note Claim, 11⅝% Senior Note Claim, 11¼% Senior Subordinated Note Claim, Convertible Subordinated Note Claim, Unsurrendered Preferred Stock Claim, or Securities Claim.

1.71    "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.72    "Indenture Trustee" means The Bank of New York or its successor, in either case in its capacity as indenture trustee under the 11¼% Senior Subordinated Notes Indenture.

1.73    "Indenture Trustees" means, collectively, the Indenture Trustee, the Senior Notes Indenture Trustee, and the indenture trustee for the 11⅝% Senior Notes Indenture.

1.74    "Interest" means (i) the interest of any holder of equity securities of ABN represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in the Debtor, whether or not transferable and (ii) any option, warrant, or right, contractual or otherwise, to acquire or receive any such interest.

1.75    "Lien" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

1.76    "Litigation Claims" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, which are to be retained by the Reorganized Debtor pursuant to Article IV.F hereof.

1.77    "Management Incentive Plan" means the management incentive plan pursuant to which the Management Incentive Options will be issued, substantially in the form of the option plan to be included in the Plan Supplement, to be adopted by ABN or Reorganized ABN pursuant to Article IV.C hereof.

1.78    "Management Incentive Plan Participants" means the employees of ABN and the employees of certain of the Subsidiaries who will be participants in the Management Incentive Plan.

1.79    "Management Incentive Options" means the options to be issued by Reorganized ABN to the Management Incentive Plan Participants to purchase New Common Stock pursuant to the provisions of the Management Incentive Plan.

1.80    "New Common Stock" means the 20 million shares of common stock of Reorganized ABN, $.01 par value per share, authorized under Article IV.C hereof and the Reorganized ABN Certificate of Incorporation and By-laws.

1.81    "New Securities" means, collectively, the New Common Stock (including shares of New Common Stock subscribed to as part of the Rights Offering in accordance with the Rights Offering Procedures), New Warrants, Equity Options, Consultant Options, and Management Incentive Options.

1.82    "New Series 1 Warrants" means the 311,241 Series 1 Warrants to purchase an aggregate of 311,241 shares of New Common Stock at an exercise price of $10.00 per share, representing the right to purchase in the aggregate approximately 2.5% of New Common Stock issued on the Distribution Date, subject to dilution by the New Series 2 Warrants, the Rights, the Management Incentive Options, the Equity Options, and the Consultant Options, issued in accordance with Article IV.C hereof and the New Warrant Agreement.

1.83    "New Series 2 Warrants" means the 311,241 Series 2 Warrants to purchase an aggregate of 311,241 shares of New Common Stock at an exercise price of $12.50 per share, representing the right to purchase in the aggregate approximately 2.5% of New Common Stock issued on the Distribution Date, subject to dilution by the New Series 1 Warrants, the Management Incentive Options, the Rights, the Equity Options, and the Consultant Options, issued in accordance with Article IV.C hereof and the New Warrant Agreement.

1.84    "New Warrants" means the New Series 1 Warrants and the New Series 2 Warrants.

1.85    "New Warrant Agreement" means the warrant agreement governing the issuance of the New Warrants substantially in the form to be included in the Plan Supplement.

1.86    "Noteholders' Committee" means the unofficial committee of certain holders of 11¼% Senior Subordinated Note Claims formed prior to the Petition Date, the members of which include Magten Asset Management, Bay Harbour Management, L.C., Highland Capital Management, L.P., and Romulus Holdings, Inc., and the two *ex officio* members of which are the Bank of New York, as Indenture Trustee, and HSBC Bank USA, as successor indenture trustee under the 10⅜% Senior Notes Indenture, which committee represents at least eighty-five percent (85%) in principal amount of the holders of the 11¼ Senior Subordinated Notes and at least fifty-six percent (56%) in principal amount of the holders of the 10⅜% Senior Notes.

1.87    "November 2002 Convertible Subordinated Notes" means the zero coupon convertible subordinated debentures of ABN due November 24, 2002, issued and outstanding under the November 2002 Convertible Subordinated Debentures.

1.88    "November 2002 Convertible Subordinated Debentures" means collectively (i) the debenture, dated as of November 24, 1997, pursuant to which $1 million in aggregate principal amount of November 2002 Convertible Subordinated Notes was issued by ABN and (ii) the debenture, dated as of November 24, 1997, pursuant to which $4 million in aggregate principal amount of November 2002 Convertible Subordinated Notes was issued by ABN.

1.89    "Opt-Out ABN Securities Claims" means any and all ABN Securities Claims, held by any Person who has filed a proof of claim in this Chapter 11 Case relating thereto, and who has elected to opt out of the Class Action Settlements.

1.90    "Opt-Out ABNH Securities Claims" means any and all ABNH Securities Claims, held by any Person who has filed a proof of claim in this Chapter 11 Case relating thereto, and who has elected to opt out of the Class Action Settlements.

1.91    "Other Priority Claim" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or Administrative Claim.

1.92    "Other Secured Claims" means, collectively, all Secured Claims other than the 10⅜% Senior Note Claims.

1.93    "Person" means any individual, corporation, partnership, association, limited liability company, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any subdivision thereof,  official or unofficial committee, and any other entity.

1.94    "Petition Date" means the date on which ABN filed its petition for reorganization relief, commencing the Chapter 11 Case.

1.95    "Plan" means this Chapter 11 plan of reorganization for ABN and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time, and includes the Plan Supplement.

1.96    "Plan Supplement" means the compilation of documents and forms of documents specified in the Plan which will be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the hearing on Confirmation.

1.97    "Preferred Stock" means the series B preferred stock, par value $.01, of ABN, authorized as of the Petition Date.

1.98    "Preferred Stock Interest" means any Interest arising from or under the Preferred Stock.

1.99    "Priority Tax Claim" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

1.100    "Professional" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 503(b)(4) or 1129(a)(4) of the Bankruptcy Code.

1.101    "Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred after the Petition Date and prior to and including the Confirmation Date.

1.102    "Pro Rata" means, at any time, the proportion that the Face Amount of a Claim or Interest in a particular Class bears to the aggregate Face Amount of all Claims or Interests (including Disputed Claims and Interests) in such Class, unless the Plan provides otherwise.

1.103    "Registration Rights Agreement" means the agreement, between Reorganized ABN and the members of the Noteholders' Committee and the Equity Committee who may be deemed to be "affiliates" or "underwriters" of Reorganized ABN for purposes of the Securities Act, governing the registration of Restated 10⅜% Senior Notes, New Warrants, Equity Options, and New Common Stock, including, but not limited to, the additional shares of New Common Stock issuable upon exercise of the New Warrants, the

Rights, and the Equity Options in substantially the form of the registration rights agreement to be included in the Plan Supplement.

1.104   "Reinstated" or "Reinstatement" means, notwithstanding any contractual provision or applicable law that entitles the holder of a Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim.

1.105   "Restated 10⅞% Senior Notes" means the 10⅞% Senior Notes, as reinstated with modifications in accordance with Article III.C.1 hereof.

1.106   "Reorganized ABN" means Reorganized ABN on and after the Confirmation Date.

1.107   "Reorganized Debtor" means Reorganized ABN on and after the Confirmation Date.

1.108   "Reorganized ABN Certificate of Incorporation and By-laws" means Reorganized ABN's certificate of incorporation and by-laws in effect under the laws of the State of Delaware, as amended by the Plan, substantially in the form to be included in the Plan Supplement.

1.109   "Restricted Subsidiary" means any direct or indirect Subsidiary of ABN whose stock is pledged by ABN to secure the 10⅞% Senior Notes pursuant to the 10⅞% Senior Notes Indenture.

1.110   "Retirement Plan" means the ABNCo Retirement Plan, a tax qualified defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§ 1302 et seq. (1994 & Supp. III 1997).

1.111   "Rights" means the rights to acquire shares of New Common Stock for a purchase price of $8.00 per share in accordance with Article IV.C.3 hereof.

1.112   "Rights Offering" means the equity rights offering under Article IV.C.3 hereof pursuant to which the holder of an Allowed Preferred Stock Interest or an Allowed Common Stock Interest may, on or prior to the deadline by which Ballots must be received, exercise its right to receive shares of New Common Stock pursuant to the Rights Offering Procedures.

1.113   "Rights Offering Procedures" means the terms and procedures of the Rights Offering that will govern the terms of the Rights Offering and shall be in substantially the same form as the Rights Offering Procedures annexed hereto as Exhibit C.

1.114   "Schedules" means the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by ABN, as such schedules or statements or may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

1.115    "Secured Claim" means a Claim, other than a Setoff Claim, that is secured by a Lien upon property, or the proceeds of the sale of such property, in which the Debtor has an interest, to the extent of the value, as of the Consummation Date or such later date as is established by the Bankruptcy Court, of such Lien as determined by a Final Order of the Bankruptcy Court pursuant to section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor or Reorganized Debtor and the holder of such Claim.

1.116    "Securities Act" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended.

1.117    "Securities Claims" means, collectively, the ABN Securities Claims and the ABNH Securities Claims.

1.118    "Securities Claims Reserve" means a reserve of five (5) percent of the portion of the Equity Reserve allocable to holders of Allowed Class 11 Claims, representing 18,308 shares of New Common Stock and 6,225 New Series 1 Warrants and 6,225 New Series 2 Warrants, established for the payment of Allowed Opt-Out ABN Securities Claims and Allowed Opt-Out ABNH Securities Claims

1.119    "Senior Notes Indenture Trustee" means HSBC Bank USA or its successor, in either case in its capacity as successor indenture trustee under the 10⅜% Senior Notes Indenture.

1.120    "Series A Preferred Stock" mean series A junior preferred stock of ABN authorized as of the Petition Date.

1.121    "Setoff Claim" means a Claim, against the Debtor, of a holder that has a valid right of setoff with respect to such Claim, which right is enforceable under section 553 of the Bankruptcy Code as determined by a Final Order or as otherwise agreed to in writing by the Debtor, to the extent of the amount subject to such right of setoff.

1.122    "Subsidiaries" means the direct and indirect subsidiaries of ABN, including American Bank Note Company; ABN Securities Systems, Inc.; Horsham Holdings Company, Inc.; American Banknote Card Services, Inc.; American Banknote Merchant Services, Inc.; American Banknote Corporation, International; ABN Investments, Inc.; ABN Equities, Inc.; ABNH Equities, Inc.; American Bank Note Grafica E. Servico Ltda. (77.5% owned); USBC Capital Corp.; Ordacard Hi-Tech Industries, Ltd. (23% owned); American Banknote Australasia Holdings, Inc.; ABN CBA, Inc.; ABN Australasia Limited; ML&C PTY LTD; American Banknote Pacific PTY LTD; ABN Australasia Holdings PTY LTD; Leigh-Mardon Payment Systems PTY LTD; American Banknote Australasia PTY LTD; American Banknote New Zealand Limited; ABN Government Services, Inc.; Sati BV; Sati Holdings S.A.; Sati S.A.; Satel S.A.; Cidel S.A.; MCE S.A.; CPS Finances S.A.; ABN South America, Inc.; American Banknote Uruguay SAFI; and Transtex S.A.

1.123    "Subsidiary Guarantees" means, collectively, the guaranties of the 11¼% Senior Subordinated Notes and the Senior Subordinated Notes Indenture executed by the Subsidiary Guarantors.

1.124    "Subsidiary Guarantors" means, collectively, American Bank Note Company, ABN Securities Systems, Inc., Horsham Holdings Company, Inc., American Banknote Card Services, Inc., American Banknote Merchant Services, Inc., ABN Investments, Inc., ABN Equities, Inc., American

Banknote Australasia Holdings, Inc., ABN Government Services, Inc., ABN CBA, Inc., and USBC Capital Corporation.

1.125    "Substantial Contribution Claim" means a claim for compensation or reimbursement of expenses incurred in making a substantial contribution in the Chapter 11 Case pursuant to section 503(b)(3),(4), or (5) of the Bankruptcy Code.

1.126    "10⅜% Senior Note Claim" means a Claim of a holder of 10⅜% Senior Notes arising from or under the 10⅜% Senior Notes.

1.127    "10⅜% Senior Notes" means the 10⅜% senior notes due June 1, 2002 of ABN, secured by the stock of the Restricted Subsidiaries, issued and outstanding under the 10⅜% Senior Notes Indenture.

1.128    "10⅜% Senior Notes Indenture" means the indenture, dated as of May 15, 1992, as modified by the first supplemental indenture, dated as of May 23, 1994, among ABN and Chemical Bank, as indenture trustee, and HSBC Bank USA as successor indenture trustee, pursuant to which the 10⅜% Senior Notes were issued.

1.129    "Unimpaired Claim" means a Claim that is not an Impaired Claim.

1.130    "Unsurrendered Preferred Stock" means the those shares of Cumulative Preferred Stock that were not surrendered for redemption to United States Banknote Corporation, the predecessor of ABN, or to ABN.

1.131    "Unsurrendered Preferred Stock Claim" means a Claim of a holder of Unsurrendered Preferred Stock arising from or under the Unsurrendered Preferred Stock.

1.132    "Unsecured Claim" means any Claim against the Debtor, other than an Administrative Claim, Secured Claim, or Other Secured Claim.

1.133    "Warrants" means all incentive stock options, non-qualified stock options, and stock appreciation rights granted under any Debtor-sponsored stock option plans, and any other options, warrants, or rights, contractual or otherwise, if any, to acquire or receive an Interest, authorized as of the Petition Date.

1.134    "Warrants Interest" means any Interest arising from or under the Warrants.

## C.    Rules Of Interpretation

For purposes of the Plan (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (ii) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (iii) unless otherwise specified, all references in the Plan to sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (iv) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (v) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the

Plan, and (vi) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**D.      Computation Of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

**A.      Introduction**

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described below, have not been classified.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Consummation Date.

**B.      Unclassified Claims (not entitled to vote on the Plan)**

1.      Administrative Claims

2.      Priority Tax Claims

**C.      Unimpaired Classes Of Claims  (deemed to have accepted the Plan and, therefore, not entitled to vote)**

1.      Class 1:  *Other Priority Claims*

Class 1 consists of all Other Priority Claims.

2.      Class 2:  *Other Secured Claims*

Class 2 consists of separate sub-Classes for each Secured Claim secured by a Lien upon property in which ABN's Estate has an interest, except for the 10⅝% Senior Note Claims.  Each sub-Class is deemed to be a separate Class for all purposes under the Plan and the Bankruptcy Code.

3.      Class 3:  *General Unsecured Claims*

Class 3 consists of all General Unsecured Claims.

4.      Class 4:  *11⅝% Senior Note Claims*

Class 4 consists of all 11⅝% Senior Note Claims.

**D.      Impaired Classes Of Claims Against And Interests In ABN**

1.      Class 5:  *10⅞% Senior Note Claims*

Class 5 consists of all 10⅞% Senior Note Claims.  Notwithstanding anything contained in this Plan to the contrary, the 10⅞% Senior Note Claims shall be deemed Allowed Class 5 10⅞% Senior Note Claims in the aggregate principal amount of $56,500,000 plus accrued and default interest through the Consummation Date.

2.      Class 6:  *11¼% Senior Subordinated Note Claims*

Class 6 consists of all 11¼% Senior Subordinated Note Claims. Notwithstanding anything contained in this Plan to the contrary, the 11¼% Senior Subordinated Note Claims shall be deemed Allowed Class 6 11¼% Senior Subordinated Note Claims in the aggregate principal amount of $95,000,000 plus accrued and default  interest through the Petition Date.

3.      Class 7:  *Convertible Subordinated Note Claims*

Class 7 consists of all Convertible Subordinated Note Claims.  Notwithstanding anything in this Plan to the contrary, the Convertible Subordinated Note Claims shall be deemed Allowed Class 7 Convertible Subordinated Note Claims in the aggregate principal amount of $3,692,881.

4.      Class 8:  *Unsurrendered Preferred Stock Claims*

Class 8 consists of all of the Unsurrendered Preferred Stock Claims.

5.      Class 9:  *Preferred Stock Interests*

Class 9 consists of all Preferred Stock Interests.

6.      Class 10:  *Common Stock Interests*

Class 10 consists of all Common Stock Interests.

7.      Class 11:  *Securities Claims*

Class 11 consists of separate sub-Classes for the ABN Securities Claims and the ABNH Securities Claims.  Each sub-Class is deemed to be a separate Class for all purposes under the Plan and the Bankruptcy Code.

a.      Class 11(a):  *ABN Securities Claims*

Class 11(a) consists of all ABN Securities Claims.

        b.        Class 11(b):  *ABNH Securities Claims*

Class 11(b) consists of all ABNH Securities Claims.

        8.        Class 12:  *Warrants Interests*

Class 12 consists of all Warrants Interests.

# ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

**A.**      **Unclassified Claims**

        1.      Administrative Claims

Except as otherwise provided for herein, and subject to the requirements of Article XIV.A hereof, each holder of an Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; *provided, however*, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Chapter 11 Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

Pursuant to section 1129(a)(4) of the Bankruptcy Code, ABN or Reorganized ABN shall pay in full the reasonable post-petition fees and expenses of the Indenture Trustees and their respective professionals, and the Noteholders' Committee's professionals, on or before the Consummation Date without the need for such Indenture Trustees or such professionals to file a fee application or obtain Bankruptcy Court approval of such fees and expenses.

        2.      Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, (i) Cash equal to the unpaid portion of such Allowed Priority Tax Claim, (ii) in the sole discretion of ABN, deferred Cash payments over a period not exceeding six years after the date of assessment of such Allowed Priority Tax Claim in an aggregate principal amount equal to the amount of such Allowed Priority Tax Claim, plus interest on the unpaid portion thereof at the Case Interest Rate, or (iii) such other treatment as to which ABN and such holder shall have agreed upon in writing. ABN reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of any Allowed Priority Tax Claim, in full at any time on or after the Distribution Date without premium or penalty.

**B.      Unimpaired Classes Of Claims**

1.      Class 1: *Other Priority Claims*

Each holder of an Allowed Class 1 Other Priority Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 1 Other Priority Claim, in the sole discretion of ABN, (i) Cash equal to the unpaid portion of such Allowed Class 1 Other Priority Claim or (ii) such other treatment as to which ABN and such holder shall have agreed upon in writing.

2.      Class 2: *Other Secured Claims*

Each sub-Class of Class 2 Other Secured Claims shall be treated as a separate class for all purposes under this Plan.  To the extent, if any, that the value of the Collateral securing a Class 2 Secured Claim is less than the total amount of such Claim, the difference shall be treated as a Class 3 General Unsecured Claim.  ABN specifically reserves all rights to challenge the validity, nature, and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens.

Each holder of  an Allowed Other Secured Claim shall, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 2 Other Secured Claim, in the sole discretion of ABN, (i) receive Cash in an amount equal to such Allowed Class 2 Other Secured Claim, (ii) receive deferred Cash payments totaling at least the allowed amount of such Allowed Class 2 Other Secured Claim, of a value, as of the Consummation Date, of at least the value of such holder's interest in the Estate's interest in the Collateral securing the Allowed Class 2 Other Secured Claim, (iii) upon abandonment by ABN, receive the Collateral securing such holder's Allowed Class 2 Other Secured Claim, (iv) receive payments or liens amounting to the indubitable equivalent of the value of such holder's interest in the Estate's interest in the Collateral securing the Allowed Class 2 Other Secured Claim, (v) have its Allowed Class 2 Other Secured Claim Reinstated, or (vi) receive such other treatment as ABN and such holder shall have agreed upon in writing.

3.      Class 3: *General Unsecured Claims*

Each holder of an Allowed Class 3 General Unsecured Claim shall, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 3 General Unsecured Claim, in the sole discretion of ABN, (i) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed Class 3 General Unsecured Claim entitles the holder of such Claim, (ii) have its Allowed Class 3 General Unsecured Claim Reinstated, or (iii) receive such other treatment as to which ABN and such holder shall have agreed upon in writing.

4.      Class 4: *11⅝% Senior Note Claims*

Each holder of an Allowed Class  4 11⅝% Senior Note Claim shall, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 4 11⅝% Senior Note Claim, in the sole discretion of ABN, (i) receive treatment that leaves unaltered the legal, equitable, and contractual rights to which such Allowed Class 4 11⅝% Senior Note Claim entitles the holder of such Claim, (ii) have its Allowed Class 4 11⅝% Senior Note Claim Reinstated (including the payment, on the Distribution Date, of any accrued and unpaid interest due through the Consummation Date), or (iii) receive such other treatment as to which ABN and such holder shall have agreed upon in writing.

## C. Impaired Classes Of Claims And Interests

1. Class 5: *10⅜% Senior Note Claims*

Each holder of an Allowed Class 5 10⅜% Senior Note Claim shall, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 5 10⅜% Senior Note Claim, have its Allowed Class 5 10⅜% Senior Note Claim Reinstated, except that the following amendments to the 10⅜% Senior Notes Indenture shall supersede any contrary provision or provisions contained in the 10⅜% Senior Notes Indenture and the 10⅜% Senior Notes, which contrary provisions shall have no further force and effect: (a) the definition of the term "Change in Control" in the 10⅜% Senior Notes Indenture shall be amended to exclude a Change in Control, if any, that results solely from the Chapter 11 Case, confirmation of this Plan, and/or the distributions to be received by holders of Claims and Interests hereunder, (b) the 10⅜% Senior Notes Indenture shall be amended to provide that ABN shall have the option to substitute pay-in-kind ("PIK") interest payments in the form of additional 10⅜% Senior Notes in lieu of cash interest payments for any interest that becomes or has become due on or prior to June 1, 2002, at ABN's sole option, (c) Section 5.06 of the 10⅜% Senior Notes Indenture shall be amended to provide that ABN and any Subsidiary (as defined in the 10⅜% Senior Notes Indenture) shall be permitted to make an "Investment" (as defined in the 10⅜% Senior Notes Indenture) of up to $20 million (instead of the current $15 million) in any "Unrestricted Subsidiary" (as defined in the 10⅜% Senior Notes Indenture) and in a Subsidiary that is not "Wholly-Owned" (as defined in the 10⅜% Senior Notes Indenture) by ABN or by a Subsidiary, (d) Section 5.07 of the 10⅜% Senior Notes Indenture shall be modified to provide that ABN shall be permitted to enter into any new credit agreement in an amount of up to $5 million, (e) Sections 5.07, 5.08, and 5.10 of the 10⅜% Senior Notes Indenture shall be amended to provide that, notwithstanding any restrictions on the incurrence of Indebtedness (as defined in the 10⅜% Senior Notes Indenture) or Liens (as defined in the 10⅜% Senior Notes Indenture) that would otherwise prohibit the incurrence of Indebtedness or Liens, ABN and its Subsidiaries shall be permitted to incur up to $1 million of Indebtedness in the aggregate, in the form of one or more loans from one or more public finance authorities or private third-party lenders and to grant Liens to secure such Indebtedness, (f) the outstanding principal amount of the 10⅜% Senior Notes Indenture shall be increased by $1,130,000 (equal to 2% of the outstanding principal amount of 10⅜% Senior Notes), (g) the 10⅜% Senior Notes Indenture shall be amended to provide that the maturity of the 10⅜% Senior Notes shall be extended one year, and (h) the definition of the term "Major Asset Sales" contained in section 5.15 of the 10⅜% Senior Notes Indenture shall be amended to provide that the asset sale basket in connection with the limitation on use of proceeds from asset sales shall be increased from $5 million to $7.5 million. The Restated 10⅜% Senior Notes shall be distributed on the Distribution Date Pro Rata among the holders of Allowed Class 5 10⅜% Senior Note Claims in exchange for the existing 10⅜% Senior Notes and shall be payable in accordance with the terms of the 10⅜% Senior Notes Indenture, as amended.

On or before the Consummation Date, Reorganized ABN and the Senior Notes Indenture Trustee shall execute an amendment to the 10⅜% Senior Notes Indenture substantially in the form of the amendment to be included in the Plan Supplement.

2. Class 6: *11¼% Senior Subordinated Note Claims*

On the Distribution Date, the 11¼% Senior Subordinated Notes shall be cancelled. Each holder of an Allowed Class 6 11¼% Senior Subordinated Note Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 6 11¼% Senior Subordinated Note Claim,

its Pro Rata share of 10,621,928 shares of New Common Stock (representing approximately ninety percent (90%) of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options, and the Consultant Options.

Effective on the Confirmation Date, (i) each holder of an 11¼% Senior Subordinated Note Claim shall be deemed to have released the Debtor, the Reorganized Debtor, and each Subsidiary Guarantor, and each of their respective officers, directors, agents, financial advisors, attorneys, employees, and representatives and their respective property from any and all claims, obligations, rights, causes of action, and liabilities which any holder of an 11¼% Senior Subordinated Note Claim may be entitled to assert, whether for tort, fraud, contract, violations of federal, state, or foreign securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Consummation Date in any way relating to the 11¼% Senior Subordinated Notes Indenture, the 11¼% Senior Subordinated Notes, or to each such Subsidiary Guarantor's Subsidiary Guarantee and (ii) each holder of an 11¼% Senior Subordinated Note Claim, the Indenture Trustee, and their respective officers, directors, agents, financial advisors, attorneys, employees, and representatives and their respective property shall be released from any and all claims, obligations, rights, causes of action, and liabilities which the Debtor or Reorganized Debtor may be entitled to assert, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Consummation Date in any way relating to the 11¼% Senior Subordinated Notes Indenture, the 11¼% Senior Subordinated Notes, or to each such Subsidiary Guarantor's Subsidiary Guarantee. Upon the occurrence of the Consummation Date, the releases contained herein shall additionally act as an injunction against (i) any holder of a 11¼% Senior Subordinated Note Claim and the Indenture Trustee from commencing or continuing any action, employment of process, or act to collect, offset, or recover any claim that is released herein and (ii) the Debtor and the Reorganized Debtor from commencing or continuing any action, employment of process, or act to collect, offset, or recover any claim that is released herein.

3.     Class 7:  *Convertible Subordinated Note Claims*

On the Distribution Date, the Convertible Subordinated Notes shall be cancelled. Each holder of an Allowed Class 7 Convertible Subordinated Note Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 7 Convertible Subordinated Note Claim, its Pro Rata share of 221,573 shares of New Common Stock (representing approximately 1.9% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options. Effective on the Confirmation Date, (i) each of the Debtor and Reorganized Debtor and their respective officers, directors, agents, financial advisors, attorneys, employees, and representatives and their respective property shall be released from any and all claims, obligations, rights, causes of action, and liabilities which any holder of a Convertible Subordinated Note Claim may be entitled to assert, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Consummation Date in any way relating to the Convertible Subordinated Notes and (ii) each holder of a Subordinated Note Claim and their respective officers, directors, agents, financial advisors, attorneys, employees, and representatives and their respective property shall be released from any and all claims, obligations, rights, causes of action, and liabilities which the Debtor or Reorganized Debtor may be entitled to assert, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether

known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Consummation Date in any way relating to the Convertible Subordinated Notes. Upon the occurrence of the Consummation Date, the releases contained herein shall additionally act as an injunction against (i) any holder of a Convertible Subordinated Note Claim from commencing or continuing any action, employment of process, or act to collect, offset, or recover any claim that is released herein and (ii) the Debtor and the Reorganized Debtor from commencing or continuing any action, employment of process, or act to collect, offset, or recover any claim that is released herein.

4.    Class 8: *Unsurrendered Preferred Stock Claims*

Unsurrendered Preferred Stock Claims will be subordinated in payment to all other Unsecured Claims pursuant to section 510(c) of the Bankruptcy Code. Each holder of an Allowed Class 8 Unsurrendered Preferred Stock Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 8 Unsurrendered Preferred Stock Claim, its Pro Rata Share of 43,245 shares of New Common Stock (representing approximately 0.4% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options.

5.    Class 9: *Preferred Stock Interests*

Immediately prior to the Distribution Date, each holder of a Class 9 Preferred Stock Interest shall be deemed to have converted each such Preferred Stock Interest into a Common Stock Interest, and each such Common Stock Interest shall be deemed to be outstanding as of the Distribution Record Date. On the Distribution Date, the Preferred Stock Interests shall be cancelled, and on the Distribution Date, 915,396 shares of New Common Stock (representing approximately 7.7% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, and 622,481 New Warrants (consisting of all of the New Warrants, and representing the right to purchase approximately 5% of the New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options) shall be placed in the Equity Reserve. On the Distribution Date each holder of an Allowed Class 9 Preferred Stock Interest, other than the Consultant, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class 9 Preferred Stock Interest, (i) 60% of the New Common Stock in the Equity Reserve multiplied by the quotient of each holder's total number of Preferred Stock shares divided by the sum of the total Common Stock shares plus the total Preferred Stock shares less 1,603,095 Common Stock shares owned by the Consultant (the quotient shall be hereinafter defined as the "Class 9 Quotient"), (ii) 60% of the New Series 1 Warrants held in the Equity Reserve multiplied by the Class 9 Quotient, (iii) 60% of the New Series 2 Warrants held in the Equity Reserve multiplied by the Class 9 Quotient, (iv) the Equity Options multiplied by the Class 9 Quotient, and (v) any New Common Stock properly subscribed for by any such holder under the Rights Offering pursuant to Article IV.C.3 hereof, representing a total distribution to Class 9 of 51,015 shares of New Common Stock (and any New Common Stock properly subscribed for), 17,346 New Series 1 Warrants, 17,346 New Series 2 Warrants, and 16,446 Equity Options. The entry of a Final Order approving the Class Action Settlements shall be a condition precedent to the occurrence of the Consummation Date.

6.     Class 10: *Common Stock Interests*

On the Distribution Date, the Common Stock Interests shall be cancelled. On the Distribution Date, 915,396 shares of New Common Stock (representing approximately 7.7% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, and 622,481 New Warrants (consisting of all of the New Warrants, and representing the right to purchase approximately 5% of the New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options) shall be placed in the Equity Reserve. On the Distribution Date, each holder of an Allowed Class 10 Common Stock Interest, other than the Consultant, shall receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Class 10 Common Stock Interest, (i) 60% of the New Common Stock in the Equity Reserve multiplied by the quotient of each holder's total number of Common Stock shares divided by the sum of the total Common Stock shares plus the Preferred Stock shares less 1,603,095 Common Stock shares owned by the Consultant (the quotient shall be hereinafter defined as the "Class 10 Quotient"), (ii) 60% of the New Series 1 Warrants held in the Equity Reserve multiplied by the Class 10 Quotient, (iii) 60% of the New Series 2 Warrants held in the Equity Reserve multiplied by the Class 10 Quotient, (iv) the Equity Options multiplied by the Class 10 Quotient, and (v) any New Common Stock properly subscribed for by any such holder under the Rights Offering pursuant to Article IV.C.3 hereof, representing a total distribution to Class 10 of 498,223 shares of New Common Stock (and any New Common Stock properly subscribed for), 169,399 New Series 1 Warrants, 169,399 New Series 2 Warrants, and 160,615 Equity Options. The entry of a Final Order approving the Class Action Settlements shall be a condition precedent to the occurrence of the Consummation Date.

7.     Class 11: *Securities Claims*

Class 11 consists of separate sub-Classes for the ABN Securities Claims and the ABNH Securities Claims. Each sub-Class is deemed to be a separate Class for all purposes under the Plan and the Bankruptcy Code. On the Distribution Date, all New Common Stock and New Warrants placed into the Equity Reserve for distribution to holders of Class 11 Claims as set forth below, less the Securities Claims Reserve, shall be transferred from the Equity Reserve to the District Court Claims Administrator to effectuate the distributions to holders of Class 11 Claims contemplated herein or as may be ordered by the District Court. Class 11 shall receive a total distribution of 366,159 shares of New Common Stock, 124,496 New Series 1 Warrants, and 124,496 New Series 2 Warrants.

a.     Class 11(a): *ABN Securities Claims*

The ABN Securities Claims will be subordinated in payment to all other Unsecured Claims under section 510(b) of the Bankruptcy Code. On the Distribution Date, 915,396 shares of New Common Stock (representing approximately 7.7% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, and 622,481 New Warrants (consisting of all of the New Warrants, and representing the right to purchase approximately 5% of the New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options) shall be placed in the Equity Reserve. On the Distribution Date, the Debtor shall transfer to the District Court Claims Administrator 347,851 shares of New Common Stock, 118,271 New Series 1 Warrants, and 118,271 New Series 2 Warrants, and as soon thereafter as the District Court Claims Administrator can effectuate the distributions described herein, each

holder of an Allowed Class 11(a) ABN Securities Claim, other than an Opt-Out ABN Securities Claim, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 11(a) ABN Securities Claim, its share of the New Common Stock, New Series 1 Warrants and New Series 2 Warrants pursuant to the allocation formula set forth in subparagraph (c) below, provided that such allocation is approved by the District Court in connection with the ABN Securities Action and the ABNH Securities Action, or as otherwise fixed by the District Court. Holders of Opt-Out ABN Securities Claims shall receive a distribution from the Securities Claims Reserve in accordance with Article IV.C.4 of this Plan. The entry of a Final Order approving the Class Action Settlements shall be a condition precedent to the occurrence of the Consummation Date.

        b.        Class 11(b): *ABNH Securities Claims*

The ABNH Securities Claims will be subordinated in payment to all other Unsecured Claims under section 510(b) of the Bankruptcy Code. On the Distribution Date, 915,396 shares of New Common Stock (representing approximately 7.7% of the initial shares of New Common Stock), subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options, and the Consultant Options, and 622,481 New Warrants (consisting of all of the New Warrants, and representing the right to purchase approximately 5% of the New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options) shall be placed in the Equity Reserve. On the Distribution Date, the Debtor shall transfer to the District Court Claims Administrator 347,851 shares of New Common Stock, 118,271 New Series 1 Warrants, and 118,271 New Series 2 Warrants, and as soon thereafter as the District Court Claims Administrator can effectuate the distributions described herein, each holder of an Allowed Class 11(b) ABNH Securities Claim, other than an Opt-Out ABNH Securities Claim, shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 11(b) ABNH Securities Claim, its share of the New Common Stock, New Series 1 Warrants and New Series 2 Warrants pursuant to the allocation formula set forth in subparagraph (c) below, provided that such allocation is approved by the District Court in connection with the ABN Securities Action and the ABNH Securities Action, or as otherwise fixed by the District Court. Holders of Opt-Out ABNH Securities Claims shall receive a distribution from the Securities Claims Reserve in accordance with Article IV.C.4 of this Plan. The entry of a Final Order approving the Class Action Settlements shall be a condition precedent to the occurrence of the Consummation Date.

        c.        Allocation Of Distributions

The District Court Claims Administrator shall determine the distribution to be made to each holder of a Class 11(a) ABN Securities Claim and a Class 11(b) ABNH Securities Claim who files an acceptable proof of claim with the District Court in accordance with the procedures to be established by the District Court in connection with the proposed settlement of the ABN Securities Action and the ABNH Securities Action (each, an "Authorized Claimant").

An Authorized Claimant's "Recognized Claim" from transactions in ABN common stock shall mean 47% of the difference, if a loss, between the amount paid (including brokerage commissions and transaction charges) for ABN common stock during the period from May 2, 1996 through and including January 25, 1999 (the "ABN Class Period"), and the sum for which said shares were sold at a loss (net of brokerage commissions and transaction charges) on or before January 25, 1999. As to those ABN shares which an Authorized Claimant purchased during the ABN Class Period and continued to hold as of January 25, 1999, Recognized Claim shall mean 47% of the difference, if a loss, between the amount paid for each such share

purchased during the ABN Class Period and $0.551 per share, the average closing price of such shares for the 90-day period following January 25, 1999. Purchases of ABN common stock during the ABN Class Period will be matched against sales of ABN common stock during the ABN Class Period on a first-in, first-out basis. Transactions resulting in a gain shall not be included.

An Authorized Claimant's "Recognized Claim" from transactions in ABNH common stock shall mean 100% of the difference, if a loss, between the amount paid (including brokerage commissions and transaction charges) for ABNH common stock during the period from July 15, 1998 through and including February 1, 1999 (the "ABNH Class Period"), and the sum for which such shares were sold at a loss (net of brokerage commissions and transaction charges) on or before February 1, 1999. As to those ABNH shares purchased during the ABNH Class Period which an Authorized Claimant continued to hold as of February 1, 1999, Recognized Claim shall mean 100% of the difference, if a loss, between the amount paid for each such share purchased during the ABNH Class Period and $2.312 per share, the average closing price of such shares for the 90-day period following February 1, 1999. Purchases of ABNH common stock during the ABNH Class Period will be matched against sales of ABNH common stock during the ABNH Class Period on a first-in, first-out basis. Transactions resulting in a gain shall not be included.

Each Authorized Claimant shall be allocated a pro rata share of the distribution of New Common Stock and New Warrants allocated to Classes 11(a) and 11(b) based upon his, her, or its Recognized Claim as compared to the total Recognized Claims of all Authorized Claimants in Classes 11(a) and 11(b).

The net shares of New Common Stock and New Warrants allocated to Classes 11(a) and 11(b), to the extent not previously sold or distributed by the District Court Claims Administrator as provided in the Class Action Settlements, shall be distributed to the holders of claims in Classes 11(a) and 11(b) in proportion to the Authorized Claimant's Recognized Claims as determined by the District Court Claims Administrator.

If, after distributions have been made to holders of Allowed Opt-Out ABN Securities Claims or Allowed Opt-Out ABNH Securities Claims, any shares of New Common Stock or New Warrants remain in the Securities Claims Reserve (representing 5% of the New Common Stock and New Warrants allocated to Class 11), such shares of New Common Stock and New Warrants shall be transferred to the District Court Claims Administrator for distribution to holders of Class 11(a) and 11(b) claims in accordance with the formula set forth above. The Debtor intends to object to the allowance of any Opt-Out ABN Securities Claims or Opt-Out ABNH Securities Claims.

8.      Class 12: *Warrants Interests*

On the Distribution Date, the Warrants Interests shall be cancelled. The holders of Class 12 Warrants Interests shall not be entitled to, and shall not, receive or retain any property or interest in property on account of such Warrants Interests.

## D.      Special Provision Regarding Unimpaired Claims

Except as otherwise provided in the Plan, nothing shall affect the Debtor's or Reorganized Debtor's rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

### E.    Accrual Of Post-petition Interest

Post-petition interest on and fees and expenses, if any, with respect to Allowed Class 2 Secured Claims and Allowed Class 4 11⅝% Senior Note Claims, including, but not limited to, unpaid professional fees due the holders of such Claims, shall be paid on the Consummation Date if due under the contract, agreement, or other instrument governing the terms and conditions of the obligation comprising such Allowed Claim.  Post-petition interest on Unimpaired Claims shall be paid as required pursuant to section 1124 of the Bankruptcy Code at the Case Interest Rate.

# ARTICLE IV

# MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Continued Corporate Existence

ABN shall continue to exist after the Consummation Date as a separate corporate entity, in accordance with Delaware law and pursuant to the Reorganized ABN Certificate of Incorporation and By-laws.  The Reorganized ABN Certificate of Incorporation and By-laws shall satisfy the requirements of the Plan and the Bankruptcy Code and shall include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities.  The Reorganized ABN Certificate of Incorporation shall also include, among other things, a provision authorizing the issuance of 20 million shares of New Common Stock.

### B.    Corporate Action

1.    Cancellation Of Existing Securities And Agreements

On the Distribution Date, except as otherwise provided for herein, (i) the Existing Securities, to the extent not already cancelled, shall be cancelled and (ii) the obligations of the Debtor under the Existing Securities and under the Debtor's certificate of incorporation, any agreements, indentures, or certificates of designations governing the Existing Securities shall be discharged; *provided, however,* that each indenture or other agreement that governs the rights of the holder of a Claim based on the Existing Securities and that is administered by an indenture trustee, agent, or servicer shall continue in effect solely for the purposes of (a) allowing such indenture trustee, agent, or servicer to make the distributions to be made on account of such Claims under the Plan as provided in Article III hereof and (b) permitting such indenture trustee, agent, or servicer to maintain any rights it may have for fees, costs, and expenses under such indenture or other agreement. The Senior Notes Indenture Trustee and ABN shall execute an amendment to the 10⅝% Senior Notes Indenture substantially in form of the second supplemental indenture annexed to the Plan Supplement as Exhibit F, and the Indenture Trustees shall make the distributions required under the Plan to the holders in Classes 4, 5, and 6, as applicable.

Any actions taken by an indenture trustee, agent, or servicer that are not for the purposes authorized in this Article IV.B.1 shall not be binding upon the Debtor.  Notwithstanding the foregoing, the Debtor may terminate any indenture or other governing agreement and the authority of any indenture trustee, agent, or servicer to act thereunder at any time, with or without cause, by giving five (5) days' written notice of

termination to the indenture trustee, agent, or servicer. If distributions under the Plan have not been completed at the time of termination of the indenture or other governing agreement, the Debtor shall designate a Disbursing Agent to act in place of the indenture trustee, agent, or servicer, and the provisions of this Article IV.B.1 shall be deemed to apply to the new distribution agent.

## C.    Restructuring Transactions

1.    New Securities

a.    *Authorization*

As of the Consummation Date, the authorization by Reorganized ABN of (i) up to 20 million shares of New Common Stock, (ii) New Warrants to purchase up to 622,481 shares of New Common Stock, (iii) Management Incentive Options in accordance with the Management Incentive Plan, (iv) Consultant Options in accordance with the Consultant Option Plan, (v) Equity Options in accordance with the Equity Options Agreement, (vi) Rights to purchase up to 10% of the shares of New Common Stock on a fully diluted basis, and (vii) Restated 10⅝% Senior Notes, is hereby authorized without further act or action under applicable law, regulation, order, or rule.

b.    *Issuance*

The New Securities authorized pursuant to this Article IV.C.1 shall be issued by Reorganized ABN pursuant to the Plan without further act or action under applicable law, regulation, order, or rule, as follows: (i) 10,621,928 shares of New Common Stock, representing approximately ninety percent (90%) of the initial shares of New Common Stock, subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, shall be issued to the holders of Class 6 11¼% Senior Subordinated Note Claims, (ii) 221,573 shares of New Common Stock, representing approximately 1.9% of the initial shares of New Common Stock, subject to dilution by the New Warrants, the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, shall be issued to holders of Class 7 Convertible Subordinated Note Claims, (iii) 43,245 shares of New Common Stock, representing approximately 0.4% of the initial shares of New Common Stock, subject to dilution by the exercise of the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, shall be issued to holders of Class 8 Unsurrendered Cumulative Preferred Stock Claims, (iv) 7.7 % of the initial shares of New Common Stock and 622,481 New Warrants to purchase up to 5% of New Common Stock, subject to dilution by the Management Incentive Options, the Rights, the Equity Options and the Consultant Options, shall be set aside in the Equity Reserve to be distributed on the Distribution Date to holders of Class 9 Preferred Stock Interests, Class 10 Common Stock Interests, and Class 11 Securities Claims, (v) 25,000 shares of New Common Stock shall be issued to ABNH, (vi) the Management Equity Incentives shall be issued to the Management Incentive Plan Participants in accordance with the Management Incentive Plan, (vii) the Consultant Options shall be issued to the Consultant in accordance with the Consultant Option Plan, (viii) the Equity Options shall be issued to holders of Class 9 Preferred Stock Interests and Class 10 Common Stock Interests in accordance with the Equity Options Agreement, (ix) up to 10% of the shares of New Common Stock on a fully diluted basis shall be issued to the holders of Class 9 Preferred Stock Interests and Class 10 Common Stock Interests who properly subscribe for such Rights under the Rights Offering pursuant to Article IV.C.3 of the Plan, and (x) the Restated 10⅝% Senior Notes shall be issued to holders of Class 5 Senior 10⅝% Senior Note Claims in accordance with Article III.C.1 hereof.

c. *Reserve*

Reorganized ABN shall reserve 4,446,875 million shares of New Common Stock for issuance pursuant to the New Warrants, the Management Incentive Options, the Rights Offering, the Equity Options, and the Consultant Options, without further act or action under applicable law, regulation, order, or rule.

2.    Registration Rights

Reorganized ABN and certain holders of shares of New Common Stock who may be deemed to be "underwriters" or "affiliates" for purposes of the Securities Act shall enter into the Registration Rights Agreement on or prior to the Consummation Date. Pursuant to the Registration Rights Agreement, after receipt by Reorganized ABN of audited financial statements, Reorganized ABN shall use its reasonable best efforts to (i) cause the shares of New Common Stock issued hereunder to be listed on a national securities exchange or, as to the New Common Stock, quoted in the national market system of the National Association of Securities Dealers' Automated Quotation System, (ii) file and have declared effective as soon as possible thereafter a registration statement or registration statements under the Securities Act of 1933, as amended (the "Securities Act"), for the offering on a continuous or delayed basis in the future of the shares of New Common Stock, Restated 10%% Senior Notes, New Warrants, and Equity Options, and the New Common Stock which may be issued upon exercise of such New Warrants, Rights, and Equity Options (the "Shelf Registration"), (iii) cause to be filed with the Securities and Exchange Commission a registration statement on Form 10 under the Exchange Act with respect to the New Common Stock, if required (iv) keep the shelf registration effective for a three-year period, and (v) supplement or make amendments thereunder or in accordance with the terms of the Registration Rights Agreement, and have such supplements and amendments declared effective as soon as practicable after filing.

3.    Rights Offering

In accordance with the terms contained in the Rights Offering Procedures, the Rights Offering will permit each holder of a Class 9 Preferred Stock Interest or Class 10 Common Stock Interest, other than the Consultant, entitled to vote in respect of the Plan to elect to subscribe for the Rights. Collectively, the Rights, which will not be evidenced by certificates, shall consist of the right to purchase up to 10% of the issued and outstanding shares of New Common Stock on a fully diluted basis as of the Distribution Date. Each Right shall represent the right to purchase one share of New Common Stock for a purchase price of $8.00 per share. Subject to any requirement of the securities laws, the Rights will be transferable in accordance with the provisions set forth in the Rights Offering Procedures; provided, however, that no Person may acquire Rights by way of transfer such that as of the Distribution Date (after giving effect to the exercise of all Rights properly subscribed to and acquired by transfer) such Person would hold an amount of New Common Stock greater than five percent (5%) of the New Common Stock issued and outstanding as of the Distribution Date.

4.    Securities Claims Reserve

On the Distribution Date, the Debtor shall establish the Securities Claims Reserve. The New Common Stock and New Warrants which constitute the Securities Claims Reserve shall be transferred only from that portion of the Equity Reserve allocable to the holders of Allowed Class 11 Claims. Each holder of Allowed Opt-Out ABN Securities Claims and Allowed Opt-Out ABNH Securities Claims shall receive New Common Stock from the Securities Claims Reserve in an amount equal to the amount of such holders'

Allowed Opt-Out ABN Securities Claim or Allowed Opt-Out ABNH Securities Claim multiplied by aggregate amount of shares of New Common Stock to be distributed to holders of Allowed ABN and ABNH Securities Claims divided by the aggregate amount of Securities Claims allowed in the ABN Securities Action and ABNH Securities Action. In addition, each holder Allowed Opt-Out ABN Securities Claims and Allowed Opt-Out ABNH Securities Claims shall receive New Warrants from the Securities Claims Reserve in an amount equal to the amount of such holders' Allowed Opt-Out ABN Securities Claim or Allowed Opt-Out ABNH Securities Claim multiplied by the aggregate amount of New Warrants to be distributed to holders of Allowed ABN and ABNH Securities Claims divided by the aggregate amount of Securities Claims allowed in the ABN Securities Action and ABNH Securities Action. If the aggregate distribution to Allowed Opt-Out ABN Securities Claims and Allowed Opt-Out ABNH Securities Claims is greater than the amount held in the Securities Claims Reserve, each holder of an Allowed Opt-Out ABN Securities Claim and Allowed Opt-Out ABNH Securities Claim shall only be entitled to its Pro Rata share of the Securities Claims Reserve. Notwithstanding any other provision of this Plan, no distribution shall be made from the Securities Claims Reserve until all Allowed amounts of Opt-Out ABN Securities Claims and ABNH Securities Claims are determined and all distributions have been made to holders of Allowed ABN Securities Claims and Allowed ABNH Securities Claims pursuant to the Class Action Settlements.

If there are no Opt-Out ABN Securities Claims or Opt-Out ABNH Securities Claims on the Distribution Date, the New Common Stock and New Warrants in the Securities Claims Reserve shall be transferred to the District Court Claims Administrator for distribution to holders of Allowed ABN Securities Claims and Allowed ABNH Securities Claims.

If, after distributions have been made to holders of Allowed Opt-Out ABN Securities Claims and Allowed Opt-Out ABNH Securities Claims, any shares of New Common Stock or New Warrants remain in the Securities Claims Reserve, such shares of New Common Stock and New Warrants shall be transferred to the District Court Claims Administrator for distribution to holders of Allowed ABN Securities Claims and Allowed ABNH Securities Claims.

## D. Directors And Officers

On the Consummation Date, the term of the current board of directors of the Debtor shall expire. The initial board of directors of the Reorganized Debtor after the Consummation Date shall consist of seven (7) members, which shall include Sidney Levy, C. Gerald Goldsmith, and five (5) members to be designated by the Noteholders' Committee. The Debtor and the Noteholders' Committee intend to announce prior to the Confirmation Date the identities of any individuals proposed to serve as directors or officers of the Reorganized Debtor. If and to the extent possible, the identities of such individuals will be announced by inclusion of a list of proposed directors and/or officers in the Plan Supplement, which will be filed with the Bankruptcy Court on or before the date that is seven (7) days prior to the hearing on Confirmation. The board of directors of the Reorganized Debtor shall have the responsibility for the management, control, and operation of the Reorganized Debtor on and after the Consummation Date.

## E. Revesting Of Assets

The property of the Debtor's Estate, together with any property of the Debtor that is not property of its Estate and that is not specifically disposed of pursuant to the Plan, shall revest in the Reorganized Debtor on the Confirmation Date. Thereafter, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and

the Bankruptcy Court. As of the Confirmation Date, all property of the Reorganized Debtor shall be free and clear of all Claims and Interests, except as specifically provided in the Plan or the Confirmation Order. Without limiting the generality of the foregoing, the Reorganized Debtor may, without application to or approval by the Bankruptcy Court, pay professional fees and expenses that it incurs after the Confirmation Date.

## F. Preservation Of Rights Of Action

Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or the Estates may hold against any Person or entity. The Reorganized Debtor or its successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtor or its successor(s) who hold such rights.

## G. Effectuating Documents; Further Transactions

The chairman of the board of directors, president, chief financial officer, or any other appropriate officer of ABN shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The secretary or assistant secretary of ABN shall be authorized to certify or attest to any of the foregoing actions.

## H. Exemption From Certain Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers from the Debtor to the Reorganized Debtor or any other Person or entity pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment (other than standard filing fees), and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment (other than standard filing fees) and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

# ARTICLE V

# ACCEPTANCE OR REJECTION OF THE PLAN

## A. Classes Entitled To Vote

Each Impaired Class of Claims that may receive or retain property or any interest in property under the Plan, i.e., Classes 5, 6, 7, 8, 9, 10, 11(a), and 11(b), shall be entitled to vote to accept or reject the Plan. By operation of law, each Unimpaired Class of Claims is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan. Because holders of Class 12 Warrant Interests are not

entitled to receive or retain any property under the Plan, Class 12 is presumed to have rejected the Plan and, therefore, shall not be entitled to vote on the Plan.

## B.    Acceptance By Impaired Classes

An Impaired Class of Claims shall have accepted the Plan if (i) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (ii) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan. An impaired Class of Interests shall have accepted the Plan if the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

## C.    Cramdown

To the extent necessary, ABN shall request Confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code. ABN reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE VI

## SECURITIES TO BE ISSUED
## IN CONNECTION WITH THE PLAN

On or before the Distribution Date, Reorganized ABN shall issue for distribution in accordance with the provisions of the Plan the New Common Stock (including shares of New Common Stock subscribed to as part of the Rights Offering in accordance with the Rights Offering Procedures), Restated 10⅜% Senior Notes, New Warrants, Management Incentive Options, Equity Options and Consultant Options required for distribution or sale pursuant to the provisions of the Plan. All securities to be issued will be deemed issued as of the Distribution Date regardless of the date on which they are actually distributed. A description of the terms of the New Common Stock is annexed hereto as Exhibit A. Copies of the New Warrant Agreement, the Management Incentive Plan, the Equity Options Agreement and the Consultant Option Plan will be included in the Plan Supplement.

## ARTICLE VII

## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Distributions For Claims Allowed As Of The Consummation Date

Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims or Interests that are Allowed Claims or Allowed Interests as of the Consummation Date shall be made on the Distribution Date, or as soon thereafter as practicable, but in any event no later than sixty (60) days after the Consummation Date. The New Securities to be issued under this Plan shall be deemed issued as of the Distribution Date regardless of the date on which they are actually distributed.

Distributions on account of Claims or Interests that first become Allowed Claims or Allowed Interests after the Consummation Date shall be made pursuant to Articles III, VII, and IX hereof.

## B.    Disbursing Agent

The Disbursing Agent shall make all distributions required under this Plan (subject to the provisions of Articles III, VII, and IX hereof), except with respect to a holder of a Claim whose distribution is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, which distributions shall be deposited with the appropriate indenture trustee, agent, or servicer, who shall deliver such distributions to the holders of Claims in accordance with the provisions of this Plan and the terms of the relevant indenture or other governing agreement.

If the Disbursing Agent is an independent third party designated by the Reorganized Debtor to serve in such capacity (or, in the case of an indenture or other agreement which governs distributions and is administered by an indenture trustee, agent, or servicer), such Disbursing Agent, indenture trustee, agent, or servicer shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Reorganized Debtor on terms acceptable to the Reorganized Debtor. No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. If otherwise so ordered, all costs and expenses of procuring any such bond shall be paid by the Reorganized Debtor.

## C.    Surrender Of Securities Or Instruments

On or before the Distribution Date, or as soon as practicable thereafter, each holder of an instrument evidencing an Existing Security (including, without limitation, shares of Unsurrendered Preferred Stock) that is not being fully Reinstated (including, without limitation, 10⅞% Senior Notes) (a "Certificate") shall surrender such Certificate to the Disbursing Agent, or, with respect to indebtedness that is governed by an indenture or other agreement, the respective indenture trustee, agent, or servicer, as the case may be, and such Certificate shall be cancelled. No distribution of property hereunder shall be made to or on behalf of any such holder unless and until such Certificate is received by the Disbursing Agent or the respective indenture trustee, agent, or servicer, as the case may be, or the unavailability of such Certificate is reasonably established to the satisfaction of the Disbursing Agent or the respective indenture trustee, agent, or servicer, as the case may be. Any such holder who fails to surrender or cause to be surrendered such Certificate or fails to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Disbursing Agent or the respective indenture trustee, agent, or servicer, as the case may be, prior to the second (2nd) anniversary of the Consummation Date, shall be deemed to have forfeited all rights and Claims or Interests in respect of such Certificate and shall not participate in any distribution hereunder, and (i) all Cash in respect of such forfeited distribution, including interest accrued thereon, shall revert to Reorganized ABN and (ii) all New Common Stock, Restated 10⅞% Senior Notes, Equity Options and New Warrants in respect of such forfeited distribution shall be cancelled notwithstanding any federal, or state escheat laws to the contrary.

**D.      Instructions To Disbursing Agent**

Prior to any distribution on account of a Class 5 10⅜% Senior Note Claim or a Class 6 11¼% Senior Subordinated Note Claim, as the case may be, the Indenture Trustee, or any agent or servicer of the 10⅜% Senior Notes or the 11¼% Senior Subordinated Notes, as the case may be, shall (i) inform the Disbursing Agent as to the amount of properly surrendered 10⅜% Senior Notes or 11¼% Senior Subordinated Notes, as the case may be, and (ii) inform the Disbursing Agent in a properly completed letter of transmittal accompanying properly remitted securities of the names of (a) the holders of Allowed Class 5 10⅜% Senior Note Claims, and the number of Restated 10⅜% Senior Notes to be issued and distributed to or on behalf of such holders of Allowed Class 5 10⅜% Senior Note Claims in exchange for properly surrendered 10⅜% Senior Notes and (b) the holders of Allowed Class 6 11¼% Senior Subordinated Note Claims, and the number of shares of New Common Stock to be issued and distributed to or on behalf of such holders of Allowed Class 6 11¼% Senior Subordinated Note Claims in exchange for properly surrendered 11¼% Senior Subordinated Notes.

**E.      Services Of Indenture Trustees, Agents, And Servicers**

The services, with respect to consummation of the Plan, of Indenture Trustees, agents, and servicers under indentures and other agreements that govern the rights of holders of Claims, shall be as set forth in the Plan.

**F.      Record Date For Distributions To Holders Of 10⅜% Senior Notes, 11⅝% Senior Notes, 11¼% Senior Subordinated Notes, Convertible Subordinated Notes,  Preferred Stock, And Common Stock**

The record date for distributions to holders of 10⅜% Senior Notes, 11⅝% Senior Notes, 11¼% Senior Subordinated Notes, Convertible Subordinated Notes, Common Stock, and Preferred Stock will be the seventh (7th) Business Day following entry of the Confirmation Order (the "Distribution Record Date"). At the close of business on the Distribution Record Date, the transfer ledgers for the 10⅜% Senior Notes, 11¼% Senior Subordinated Notes, Convertible Subordinated Notes, Preferred Stock Interests, and Common Stock Interests  shall be closed, and there shall be no further changes in the record holders of such securities. Reorganized ABN and the Disbursing Agent, if any, shall have no obligation to recognize any transfer of any such securities occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date.

**G.      Means Of Cash Payment**

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion; *provided, however,* that any cash payment in excess of $1,000,000 shall, notwithstanding the foregoing, be effected by wire transfer.

**H.      Calculation Of Distribution Amounts Of New Securities**

No fractional shares of New Common Stock or other New Securities, and no New Warrants, Rights, Consultant Options, Management Incentive Options or Equity Options for fractional shares of New Common Stock, shall be issued or distributed under the Plan or by Reorganized ABN or any Disbursing Agent, indenture trustee, agent, or servicer. Each Person entitled to receive New Common Stock or other New Securities shall receive the total number of whole shares of New Common Stock or other New Securities to which such Person is entitled. Whenever any distribution to a particular Person would otherwise call for distribution of a fraction of a share of New Common Stock or of a fraction of any of the New Securities, the Disbursing Agent shall allocate separately one whole share, right, option or warrant, as the case may be, to such Person and other Persons similarly entitled, in order of the fractional portion of their entitlements, starting with the largest such fractional portion, until all remaining whole shares or warrants have been allocated. Upon the allocation of a whole share or warrant to a Person in respect of the fractional portion of its entitlement, such fractional portion shall be cancelled. If two or more Persons are entitled to equal fractional entitlements and the number of Persons so entitled exceeds the number of whole shares, rights, options or warrants which remain to be allocated, the Disbursing Agent shall allocate the remaining whole shares, rights, options or warrants to such holders by random lot or such other impartial method as the Disbursing Agent deems fair. Upon the allocation of all of the whole shares, rights, options or warrants authorized under the Plan, all remaining fractional portions of the entitlements shall be cancelled and shall be of no further force and effect. The Disbursing Agent, or any indenture trustee, agent, or servicer, as the case may be, shall not make any distribution of less than five (5) shares of New Common Stock, five (5) Equity Options, or five (5) New Warrants with respect to any Claim or Interest unless a request therefor is made in writing to such Disbursing Agent, indenture trustee, agent, or servicer, as the case may be.

**I.      Delivery Of Distributions**

Distributions to holders of Allowed Claims or Allowed Interests shall be made by the Disbursing Agent or the appropriate indenture trustee, agent, or servicer, as the case may be, (a) at the addresses set forth on the proofs of Claim or Interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim or Interest, (c) at the addresses reflected in the Schedules if no proof of Claim or Interest has been filed and the Disbursing Agent has not received a written notice of a change of address, (d) in the case of the holder of a Claim that is governed by an indenture or other agreement and is administered by an indenture trustee, agent, or servicer, at the addresses contained in the official records of such indenture trustee, agent, or servicer, or (e) at the addresses set forth in a properly completed letter of transmittal accompanying securities properly remitted to the Debtor. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent or the appropriate indenture trustee, agent, or servicer is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made through the Disbursing Agent or the indenture trustee, agent, or servicer shall be returned to the Reorganized Debtor until such distributions are claimed. All claims for undeliverable distributions must be made on or before the second (2nd) anniversary of the Consummation Date, after which date (i) all Cash in respect of such undeliverable distribution, including interest accrued thereon, shall revert to Reorganized ABN and (ii) all New Common Stock, Restated 10⅜% Senior Notes, Equity Options and New Warrants in respect of such undeliverable distribution shall be cancelled notwithstanding, any federal or state escheat laws to the contrary. Notwithstanding anything to the contrary

herein, any and all distributions to holders of Class 11 Claims (other than opt-outs) shall be made by the District Court Claims Administrator in accordance with the terms of the Class Action Settlements and the terms hereof.

## J.    Fractional Dollars; De Minimis Distributions

Any other provision of the Plan notwithstanding, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. The Disbursing Agent, or any indenture trustee, agent, or servicer, as the case may be, shall not make any payment of less than twenty-five dollars ($25.00) with respect to any Claim unless a request therefor is made in writing to such Disbursing Agent, indenture trustee, agent, or servicer, as the case may be.

## K.    Withholding And Reporting Requirements

In connection with this Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements.  The Disbursing Agent shall be authorized to take any and all actions as may be necessary or appropriate to comply with such withholding and reporting requirements.

## L.    Setoffs

The Reorganized Debtor may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor or Reorganized Debtor may have against the holder of such Claim; *provided, however,* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtor of any such claim that the Debtor or Reorganized Debtor may have against such holder.

The holder of a Disputed Claim who asserts a right of setoff shall retain such right, subject to any defenses of the Debtor or Reorganized Debtor, until the earlier of the time when (i) such Disputed Claim becomes Allowed, in whole or in part, or (ii) such claim is expunged by entry of an order of the Bankruptcy Court.

## ARTICLE VIII

## TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

## A.    Assumed Contracts And Leases

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Consummation Date the Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed or rejected by the Debtor, (ii) previously expired or

terminated pursuant to its own terms, (iii) is the subject of a motion to reject filed on or before the Confirmation Date, or (iv) is identified as a rejected executory contract or a rejected unexpired lease, as applicable, in the Plan Supplement. The Confirmation Order shall constitute an order of the Bankruptcy Court under section 365 of the Bankruptcy Code approving the contract and lease assumptions and rejections described above, as of the Consummation Date.

Each executory contract and unexpired lease that is assumed and relates to the use, ability to acquire, or occupancy of real property shall include (i) all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vaults, tunnel or bridge agreements or franchises, and any other interests in real estate or rights *in rem* related to such premises, unless any of the foregoing agreements has been rejected pursuant to an order of the Bankruptcy Court.

## B.     Payments Related To Assumption Of Contracts And Leases

Any monetary amounts by which each executory contract and unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, at the option of the Debtor party to the contract or lease or the assignee of the Debtor party assuming such contract or lease, by Cure. If there is a dispute regarding (i) the nature or amount of any Cure, (ii) the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption, Cure shall occur following the entry of a Final Order resolving the dispute and approving the assumption or assumption and assignment, as the case may be.

## C.     Rejected Contracts And Leases

Except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, none of the executory contracts and unexpired leases to which the Debtor is a party shall be rejected under the Plan; *provided, however,* that the Debtor reserves the right, at any time prior to the Confirmation Date, to seek to reject any executory contract or unexpired lease to which it is a party.

## D.     Bar To Rejection Damages

If the rejection by the Debtor, pursuant to the Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of Claim or a proof of Claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against the Debtor or Reorganized Debtor, or the properties of the Debtor or Reorganized Debtor, unless a proof of Claim is filed with the Clerk of the Bankruptcy Court and served upon counsel for the Debtor within thirty (30) days after service of the earlier of (i) notice of entry of the Confirmation Order or (ii) other notice that the executory contract or unexpired lease has been rejected.

E.    **Certain Employment Contracts**

ABN shall assume the employment contracts of Patrick J. Gentile, Ira M. Horowitz, and Patrick D. Reddy, and the consulting agreement with Sydney Levy. ABN currently intends to assume the employment agreement of Sheldon Cantor or modify such agreement in a manner acceptable to ABN and Sheldon Cantor. Prior to Confirmation, ABN may seek to modify the employment agreements of certain other employees or to settle any claims made thereunder.

F.    **Compensation And Benefit Plans And Treatment Of Retirement Plan**

1.    Except and to the extent previously assumed by an order of the Bankruptcy Court, on or before the Confirmation Date, and except as set forth in paragraph 2 below, all employee compensation and Benefit Plans of the Debtor, including programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and not since terminated, shall be deemed to be, and shall be treated as if they were, executory contracts that are assumed under Article VIII.A hereof, but only to the extent that rights under such programs are held by the Debtor or Persons who are employees of the Debtor as of the Confirmation Date, and the Debtor's obligations under such programs to Persons who are employees of the Debtor on the Confirmation Date shall survive confirmation of this Plan, except for (i) executory contracts or Benefit Plans specifically rejected pursuant to the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code) and (ii) such executory contracts or Benefit Plans as have previously been rejected, are the subject of a motion to reject, or have been specifically waived by the beneficiaries of any Benefit Plans or contracts; *provided, however,* that the Debtor's obligations, if any, to pay all "retiree benefits" as defined in section 1114(a) of the Bankruptcy Code shall continue.

2.    ABN affirms and agrees that it is and will continue to be a contributing sponsor of the Retirement Plan, as defined under 29 U.S.C. § 1301(a)(13) and 29 C.F.R. § 4001.2, or a member of the contributing sponsor's controlled group, as defined under 29 U.S.C. § 1302(a)(14) and 29 C.F.R. § 4001.2. As a contributing sponsor or member of the controlled group of the Retirement Plan, ABN intends to fund the Retirement Plan in accordance with the minimum funding standards under ERISA, 29 U.S.C. § 1082, pay all required Pension Benefit Guaranty Corporation ( "PBGC") insurance premiums, 29 U.S.C. § 1307, and comply with all requirements of the Retirement Plan and ERISA. The Retirement Plan is a defined benefit pension plan insured by the PBGC under Title IV of ERISA, 29 U.S.C. §§ 1301-1461. The Retirement Plan is subject to the minimum funding requirements of ERISA, 29 U.S.C. § 1082, and section 412 of the Internal Revenue Code, 26 U.S.C. § 412. No provision of or proceeding within the Chapter 11 Case, the Plan, or the Confirmation Order shall in any way be construed as discharging, releasing, or relieving the Debtor, the Reorganized Debtor, or any other party in any capacity, from any liability with respect to the Retirement Plan or any other Retirement Plan under any law, governmental policy, or regulatory provision. The PBGC and the Retirement Plan shall not be enjoined or precluded from enforcing liability resulting from any of the provisions of the Plan or Confirmation of the Plan.

# ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS

### A.    Objection Deadline; Prosecution Of Objections

As soon as practicable, but in no event later than 120 days after the Consummation Date (unless extended by an order of the Bankruptcy Court), the Debtor or Reorganized Debtor, as the case may be, shall file objections to Claims (including any Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, and Unsecured Claim) or Interests with the Bankruptcy Court and serve such objections upon the holders of each of the Claims or Interests to which objections are made. Nothing contained herein, however, shall limit the Reorganized Debtor's right to object to Claims or Interests, if any, filed or amended more than 120 days after the Consummation Date.

The foregoing shall apply to any and all Claims that are listed in the Schedules as disputed, contingent, and/or unliquidated *only if* the holder of any such Claim filed a proof of Claim on account of such Claim. The Debtor reserves its right to seek an order expunging and disallowing any Claim that is listed in the Schedules as disputed, contingent, and/or unliquidated, and for which no proof of Claim was timely filed. Additionally, the Debtor shall enter into a stipulation with the plaintiffs in the ABN Securities Action and ABNH Securities Action who are not also holders of Opt-Out ABN Securities Claims and Opt-Out ABNH Securities Claims, which shall provide that (i) such Persons shall not be required to file a proof of claim in the Bankruptcy Court, and such claims shall be determined by the District Court Claims Administrator, and (ii) any objection of the Debtor to such claims shall be asserted in the Securities Actions in the District Court.

### B.    No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim or Disputed Interest unless and until all objections to such Disputed Claim or Disputed Interest have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim or Disputed Interest, or some portion thereof, has become an Allowed Claim or an Allowed Interest.

### C.    Distribution Reserve

1.    The Disbursing Agent shall withhold the Distribution Reserve from the Cash, New Common Stock, Equity Options, New Warrants, or other property to be distributed under the Plan. As to any Disputed Claim (other than Securities Claims) or Disputed Interest, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold as the Distribution Reserve. The Debtor may request estimation for every Disputed Claim that is unliquidated and the Disbursing Agent shall withhold the Distribution Reserve based upon the estimated amount of such Claim as set forth in a Final Order. If the Debtor elects not to request such an estimation from the Bankruptcy Court with respect to a Disputed Claim that is liquidated, the Disbursing Agent shall withhold the Distribution Reserve based upon the Face Amount of such Claim.

2.     Neither the Disbursing Agent, nor any other party, shall be entitled to vote any shares of New Common Stock held in the Distribution Reserve or the Equity Reserve.  In the event that any matter requires approval by the shareholders of Reorganized ABN prior to the distribution or cancellation of all shares of New Common Stock from the Distribution Reserve, the shares of New Common Stock held by the Disbursing Agent shall, for voting purposes only, be deemed not to have been issued.

3.     If practicable, the Disbursing Agent shall invest any Cash that is withheld as the Distribution Reserve in a manner that shall yield a reasonable net return, taking into account the safety of the investment.

## D.     Distributions After Allowance

The Reorganized Debtor or the Disbursing Agent, as the case may be, shall make payments and distributions from the Distribution Reserve to each holder of a Disputed Claim or a Disputed Interest that has become an Allowed Claim or an Allowed Interest in accordance with the provisions of the Plan governing the class of Claims or Interests to which such holder belongs.  On the next succeeding interim distribution date after the date that the order or judgment of the Bankruptcy Court allowing all or part of such Claim or Interest becomes a Final Order, the Disbursing Agent shall distribute to the holder of such Claim or Interest any Cash, New Common Stock, Equity Options, New Warrants, or other property in the Distribution Reserve as would have been distributed on the Distribution Date had such Allowed Claim or Allowed Interest been allowed on the Distribution Date.  After a Final Order has been entered, or other final resolution has been reached, with respect to each Disputed Claim or Disputed Interest, (i) any New Common Stock, Equity Options, or New Warrants held in the Distribution Reserve shall be distributed Pro Rata to holders of Allowed Claims or Interests entitled thereto under the terms of this Plan and (ii) any Cash or other property remaining in the Distribution Reserve shall become property of the Reorganized Debtor. Notwithstanding the foregoing, no distributions shall be made from the Equity Reserve to the holders in Classes 9, 10, and 11 until the occurrence of the Distribution Date.  All distributions made under this Article IX.D on account of an Allowed Claim or an Allowed Interest shall be made together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the distributed property, as if such Allowed Claim or Allowed Interest had been an Allowed Claim or Allowed Interest on the Distribution Date.  Notwithstanding the foregoing, the Disbursing Agent shall not be required to make distributions under Article IX.D more frequently than once every 180 days or to make any individual payments in an amount less than $25.00.

## ARTICLE X

## CONDITIONS PRECEDENT TO CONFIRMATION AND
## CONSUMMATION OF THE PLAN

## A.     Conditions To Confirmation

The following are conditions precedent to confirmation of the Plan that must be satisfied or waived in accordance with Article X.C below:

1.     The proposed Confirmation Order shall be in form and substance reasonably acceptable to the Debtor, the Noteholders' Committee and the Equity Committee.

2. The Debtor shall have access to Cash, in the form of dividends and intercompany advances from its Subsidiaries, in an amount acceptable to the Debtor, to provide the Reorganized Debtor with working capital to meet ordinary and peak requirements.

3. An order of the District Court granting preliminary approval of the Class Action Settlements shall have been entered.

**B.    Conditions To Consummation**

The following are conditions precedent to the occurrence of the Consummation Date, each of which must be satisfied or waived in accordance with Article X.C below:

1. The Confirmation Order, in form and substance reasonably acceptable to the Debtor, the Noteholders' Committee, and the Equity Committee, must have become a Final Order and must, among other things, provide that:

a. the Debtor and Reorganized Debtor are authorized and directed to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

b. the provisions of the Confirmation Order are nonseverable and mutually dependent;

c. all executory contracts or unexpired leases assumed or assumed and assigned by the Debtor during the Chapter 11 Case or under the Plan shall remain in full force and effect for the benefit of the Reorganized Debtor or its assignees notwithstanding any provision in such contract or lease (including those described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables, permits, or requires termination of such contract or lease;

d. the transfers of property by the Debtor (i) to the Reorganized Debtor (a) are or will be legal, valid, and effective transfers of property, (b) vest or will vest the Reorganized Debtor with good title to such property free and clear of all liens, charges, Claims, encumbrances, or interests, except as expressly provided in the Plan or Confirmation Order, (c) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or nonbankruptcy law, and (d) do not and will not subject the Reorganized Debtor to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor, transferee or stamp or recording tax liability and (ii) to holders of Claims or Interests under the Plan are for good consideration and value;

e. except as expressly provided in the Plan, the Debtor is discharged effective upon the Confirmation Date from any "debt" (as that term is defined in section 101(12) of the Bankruptcy Code), and the Debtor's liability in respect thereof is extinguished completely, whether reduced to judgment or not, liquidated or unliquidated, contingent or noncontingent, asserted or unasserted, fixed or unfixed, matured or unmatured, disputed or undisputed, legal or equitable, or known or unknown, or that arose from any agreement of the Debtor that has either been assumed or rejected in the Chapter 11 Case or pursuant to the Plan, or obligation of the Debtor incurred before the Confirmation Date, or from any conduct of the Debtor prior to the Confirmation Date, or that otherwise arose before the Confirmation Date, including, without

limitation, all interest, if any, on any such debts, whether such interest accrued before or after the Petition Date;

       f.      the Plan does not provide for the liquidation of all or substantially all of the property of the Debtor and its Confirmation is not likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization;

       g.      all Interests shall be cancelled effective upon the Distribution Date;

       h.      the Restated 10⅜% Senior Notes, New Common Stock, Rights, Equity Options, Consultant Options, and New Warrants issued under the Plan in exchange for Claims or Interests are exempt from registration under the Securities Act of 1933 pursuant to section 1145 of the Bankruptcy Code, except to the extent that any holders of New Common Stock are "underwriters," as that term is defined in section 1145 of the Bankruptcy Code;

       i.      each holder of a Senior Subordinated Note Claim shall be deemed to have released each Subsidiary Guarantor from such Subsidiary Guarantor's Subsidiary Guarantee; and

      2.      The Reorganized Debtor shall have access to Cash, in the form of dividends and intercompany advances from its Subsidiaries, in an amount acceptable to the Reorganized Debtor, to provide it with working capital to meet ordinary and peak requirements.

      3.      All authorizations, consents, and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

      4.      The following agreements, in form satisfactory to the Debtor, the Noteholders' Committee, and the Equity Committee, shall have been executed and delivered, and all conditions precedent thereto shall have been satisfied:

       a.      Reorganized ABN Certificate of Incorporation and By-laws;

       b.      New Warrant Agreement;

       c.      Management Incentive Plan;

       d.      Consultant Option Plan;

       e.      Amendment To 10 3/8% Senior Notes Indenture;

       f.      Tail insurance under the ABN D&O Policy in the amount of $10 million at a cost not to exceed $1 million;

       g.      Registration Rights Agreement;

       h.      Settlement Agreement Between ABN And ABNH; and

       m.      Equity Options Agreement.

5.	An order of the District Court authorizing the Class Action Settlements shall have been entered and shall have become a Final Order.

6.	A final judgment of permanent injunction shall have been entered by a United States District Court which enjoins ABN from violating the antifraud provisions of the Securities Act of 1933 (Section 17(a) ) and the antifraud, periodic reporting, internal accounting controls, and record-keeping provisions of the Securities Exchange Act of 1934 (Sections 10(b), 13(a), and 13(b)(2)(A) and (B) and Rules 10b-5, 12b-20, 13a-1, and 13a-13 thereunder) and which does not require ABN to pay any disgorgement or a civil penalty.

7.	A final resolution of the United States Attorneys' Office investigation of the revenue recognition issues at ABNH shall have occurred in a manner satisfactory to ABN and the Noteholders' Committee.

8.	All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

## C.	Waiver Of Conditions

Each of the conditions set forth in Articles X.A and X.B above, other than those set forth in Article X.A.1, X.A.3, and X.B.5, may be waived in whole or in part by the Debtor or Reorganized Debtor with the consent of the Noteholders' Committee without any notice to parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Consummation Date may be asserted by the Debtor or Reorganized Debtor with the consent of the Noteholders' Committee regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by the Debtor or Reorganized Debtor). The failure of the Debtor or Reorganized Debtor to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## ARTICLE XI

## MODIFICATIONS AND AMENDMENTS

With the consent of Noteholders' Committee and the Equity Committee, the Debtor may alter, amend, or modify this Plan or any Exhibits hereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and to accomplish such matters as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims or Interests under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

# ARTICLE XII

## RETENTION OF JURISDICTION

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Consummation Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

A.  Allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

B.  Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103, and 1129(a)(4) of the Bankruptcy Code; *provided, however,* that from and after the Consummation Date, the payment of the fees and expenses of the retained professionals of the Reorganized Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

C.  Hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

D.  Effectuate performance of and payments under the provisions of the Plan;

E.  Hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

F.  Enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

G.  Hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

H.  Consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

I.  Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

J.  Enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated, or distributions pursuant to the Plan are enjoined or stayed;

K. Hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

L. Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case;

M. Recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

N. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

O. Hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

P. Hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

Q. Enter a final decree closing the Chapter 11 Case.

## ARTICLE XIII

## COMPROMISES AND SETTLEMENTS

Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), ABN shall effectuate the compromises and settlements described below.

**A.     Settlement Between ABN And ABNH**

ABN and ABNH have agreed to settle their respective claims as follows:  (i) ABN and ABNH shall release each other from (a) any obligations pursuant to that certain separation agreement, dated as of July 20, 1998 and (b) any sums allegedly owing by each of them and their affiliates to the other; (ii) ABN shall be responsible for all income, franchise, or similar tax liabilities of ABNH or any person for which ABNH is or may be liable, including costs and expenses, for the period January 1, 1990 through July 20, 1998; (iii) ABNH shall remit to ABN any franchise or similar tax refunds for the periods prior to July 20, 1998; (iv) ABNH and ABNCo and Sati Group shall exchange mutual releases; (v) ABNH shall withdraw its proof of claim in the Chapter 11 Case with prejudice; and (vi) ABNH shall receive 25,000 shares of New Common Stock.  The agreement between ABN and ABNH, which is a Plan Supplement document, is incorporated herein by reference.

**B.     Settlement Among ABN, ABNH, And Parties To The ABN And ABNH Securities Actions**

The plaintiffs in the ABN Securities Action, the plaintiffs in the ABNH Securities Action, ABN, ABNH, and the certain other defendants in the aforementioned actions (other than Deloitte & Touche, LLP ("Deloitte")) have agreed to settle their respective claims as follows:  (i) the plaintiffs shall release ABN, ABNH, certain other defendants (other than Deloitte), and certain other officers and directors of ABN and ABNH from any claims plaintiffs may have against such parties in connection with the purchase or sale of

the common stock of ABN, ABNH, or other acts and omissions relating thereto; (ii) National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") shall deposit the sum of $12.5 million into an interest bearing escrow account for ultimate distribution to the plaintiffs; (iii) ABNH shall deliver to the plaintiffs' counsel 1,460,000 shares of ABNH common stock, subject to adjustment, and ABNH shall issue warrants to purchase 863,647 shares of ABNH common stock at an exercise price of $6.00 per share, subject to adjustment; (iv) ABN shall deliver to the plaintiffs' counsel forty percent (40%) of the allocation of the distribution of approximately 7.7% of the New Common Stock and New Warrants in accordance with the terms of this Plan; (v) defendants shall cooperate with continuing discovery in the settled actions and in the continuing action against Deloitte; (vi) any and all claims that Deloitte may have against ABN and the other defendants for, among other things, contribution and/or indemnity shall be discharged, and plaintiffs shall reduce any judgment obtained against Deloitte by an amount defendants or their insurance carrier would be obligated to pay Deloitte; and (vii) the defendants and National Union shall release each other from claims relating to the ABN Securities Action or ABNH Securities Action. The agreement, which is a Plan Supplement document, is incorporated herein by reference. In the event of any conflict between the agreement described herein and the summary of this agreement provided herein and in the Disclosure Statement, the terms of the agreement itself shall govern.

## C.     Settlement Between Equity Committee And Plaintiffs In ABN And ABNH Securities Actions

The plaintiffs in the ABN Securities Action and ABNH Securities Action (collectively, the "Plaintiffs") and the Equity Committee have agreed to resolve the issues concerning the appropriate allocation of New Securities between their respective constituencies as follows: (i) the Plaintiffs shall receive forty percent (40%) of the Equity Reserve and the existing common and preferred stockholders of ABN shall receive sixty percent (60%) of the Equity Reserve, respectively, and (ii) holders of Class 9 Interests and Class 10 Interests shall receive (a) any distribution that would otherwise be made to the Consultant in respect of shares of Common Stock held by the Consultant, and (b) any options or warrants previously contemplated to be distributed under any agreement, plan, or grant to the Consultant (other than the Consultant Options). The agreement, which is annexed hereto as Exhibit E, is incorporated herein by reference.

## D.     Settlement Between Consultant And Equity Committee

The Equity Committee and the Consultant have agreed as follows: the Consultant shall grant to the holders of Class 10 Common Stock Interests his entitlement to receive New Common Stock hereunder.

Pursuant to Fed. R. Bankr. P. 9019(a), the Debtor may compromise and settle various Claims against it and/or claims that it may have against other Persons. The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons up to and including the Consummation Date. After the Consummation Date, such right shall pass to the Reorganized Debtor pursuant to Articles IV.E and IV.F hereof.

# ARTICLE XIV

## MISCELLANEOUS PROVISIONS

### A.      Bar Dates For Certain Claims

1.      Administrative Claims; Substantial Contribution Claims

The Confirmation Order will establish an Administrative Claims Bar Date for the filing of all Administrative Claims, including Substantial Contribution Claims (but not including claims for Professional Fees or the expenses of the members of any statutory committee (if appointed)), which date will be 45 days after the Distribution Date. Holders of asserted Administrative Claims, other than claims for Professional Fees, United States Trustee fees, or the expenses of the members of any statutory committee (if appointed), not paid prior to the Confirmation Date must submit proofs of Administrative Claim on or before such Administrative Claims Bar Date or forever be barred from doing so. The notice of Confirmation to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) will set forth such date and constitute notice of this Administrative Claims Bar Date. The Debtor or Reorganized Debtor, as the case may be, shall have 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

2.      Professional Fee Claims

All final requests for compensation or reimbursement of Professional Fees pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered to the Debtor or any statutory committee (if appointed) prior to the Consummation Date (other than Substantial Contribution Claims under section 503(b)(4) of the Bankruptcy Code) must be filed and served on the Reorganized Debtor and its counsel no later than 45 days after the Distribution Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtor and its counsel and the requesting Professional or other entity no later than 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable application for compensation or reimbursement was served.

3.      Other Claims

By order dated December 9, 1999, the Bankruptcy Court entered an order (the "Bar Date Order") setting January 24, 2000 (the "Bar Date") as the last date for the filing of proofs of Claim against the Debtor on account of any Claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor, which arose prior to the Petition Date. Pursuant to the Bar Date Order and Fed. R. Bankr. P. 3003(c)(2), any person or entity that is required to file a timely proof of Claim in the form and manner specified by the Bar Date Order and that fails to do so on or before the Bar Date (or, in the case of a Claim based upon the Debtor's rejection of an unexpired lease or executory contract, before the Rejection Damages Bar Date, as defined in the Bar Date Order), shall not be entitled to vote on the Plan and shall not receive or retain, or be

entitled to receive or retain, any property or any payment or distribution of property from the Debtor or its successors or assigns with respect to such Claim.

## B.  Payment Of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Consummation Date. All such fees that arise after the Consummation Date but prior to the closing of the Chapter 11 Case shall be paid by Reorganized ABN.

## C.  Severability Of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## D.  Successors And Assigns

The rights, benefits, and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such entity.

## E.  Discharge Of The Debtor And Injunction

All consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims against and Interests in the Debtor of any nature whatsoever or against any of the Debtor's assets or properties. Except as otherwise expressly provided in the Plan, entry of the Confirmation Order acts as a discharge of all Claims against, liens on, and Interests in each of the Debtor, the Debtor's assets, and its properties, arising at any time before the entry of the Confirmation Order, regardless of whether a proof of Claim or proof of Interest therefor was filed, whether the Claim or Interest is Allowed, or whether the holder thereof votes to accept the Plan or is entitled to receive a distribution thereunder, subject to the occurrence of the Distribution Date. Upon entry of the Confirmation Order, and subject to the occurrence of the Distribution Date, any holder of such discharged Claim or Interest shall be precluded from asserting against the Debtor or any of its assets or properties any other or further Claim or Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the date of entry of the Confirmation Order. The Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor, subject to the occurrence of the Distribution Date.

In accordance with section 524 of the Bankruptcy Code, the discharge provided by this section and section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation

of any action, employment of process, or act to collect, offset, or recover the Claims and Interests discharged hereby. Except as otherwise expressly provided in the Plan or the Confirmation Order, all entities who have held, hold, or may hold Claims against, or Interests in, the Debtor will be permanently enjoined, on and after the Consummation Date, subject to the occurrence of the Distribution Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest, (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Interest, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest, and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest. The foregoing injunction will extend to successors of the Debtor (including, without limitation, the Reorganized Debtor) and their respective properties and interests in property.

## F.    **Debtor Releases**

Effective as of the Confirmation Date, but subject to the occurrence of the Distribution Date, the Debtor shall release and be permanently enjoined from any prosecution or attempted prosecution of any and all causes of action which it has, may have, or claims to have against any present or former director, officer, or employee of the Debtor relating to the Chapter 11 Case or the Plan; *provided*, *however*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of (i) any express contractual obligation owing by any such director, officer, or employee of the Debtor or (ii) the willful misconduct, gross negligence, or breach of fiduciary duty of such director, officer, or employee in connection with, related to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan.

## G.    **Other Releases**

Effective as of the Confirmation Date, but subject to the occurrence of the Distribution Date, and except as otherwise provided herein or in the Confirmation Order, the Indenture Trustees and each of the Debtor's, Reorganized Debtor's, Noteholders' Committee's, Indenture Trustees', and Equity Committee's respective members, officers, directors, agents, financial advisors, attorneys, employees, and representatives and their respective property shall be released from any and all claims, obligations, rights, causes of action, and liabilities which the Debtor, Reorganized Debtor, or any holder of a Claim against or Interest in the Debtor may be entitled to assert, whether for tort, fraud, contract, violations of federal or state securities laws, or otherwise, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part upon any act or omission, transaction, or other occurrence taking place on or before the Confirmation Date in any way relating to the Chapter 11 Case or the Plan; *provided, however,* that nothing herein shall release any Person from any claims, obligations, rights, causes of action or liabilities based upon any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Consummation of the Plan, the administration of the Plan, or the property to be distributed under the Plan arising out of such Person's gross negligence or willful misconduct.

Effective as of the Confirmation Date, but subject to the occurrence of the Distribution Date, and except as otherwise provided herein or in the Confirmation Order, current and former agents and employees of ABN and former officers and directors of ABN shall be deemed to have released any claims against

ABNH that relate to or arise from any transactions that took place prior to the spinoff of ABNH by ABN on July 20, 1998, which claims concern the business or operations of ABN or ABNH.

Notwithstanding any other provision in the Disclosure Statement, the Plan, or the Confirmation Order, nothing in the Disclosure Statement, the Plan, or the Confirmation Order shall release, discharge, or exculpate any non-debtor party from any debt owed to the United States Government and/or its agencies, including the PBGC, for any liability arising under the Internal Revenue Code, ERISA, the environmental laws, or any criminal laws of the United States. In addition, notwithstanding any other provision in the Disclosure Statement, the Plan, or the Confirmation Order, nothing in the Disclosure Statement, the Plan, or the Confirmation Order shall enjoin or prevent the Government from collecting any such liability from any such non-debtor party. Notwithstanding any other provision in the Disclosure Statement, the Plan, or the Confirmation Order, nothing in the Disclosure Statement, the Plan, or the Confirmation Order shall release, discharge, or exculpate ABN from any criminal laws of the United States.

## H.     Waiver Of Enforcement Of Subordination

All Claims against and Interests in ABN and all rights and claims between or among holders of Claims and Interests relating in any manner whatsoever to Claims against and Interests in ABN, based upon any claimed subordination rights (if any), shall be deemed satisfied by the distributions under the Plan to holders of Claims and Interests having such subordination rights, and such subordination rights shall be deemed waived, released, discharged, and terminated as of the Consummation Date, except with respect to holders of Class 4 Claims and Class 5 Claims, which are not waiving any such rights prospectively after the Consummation Date and will retain such rights under the applicable indentures. Distributions to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claimed subordination rights or otherwise, so that each holder of a Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.

## I.     Committees

Effective twenty (20) days after the Distribution Date, the duties of any statutory committee shall terminate, except with respect to any appeal of an order in the Chapter 11 Case and applications for Professional Fees.

## J.     Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, and their respective successors and assigns, including, but not limited to, the Reorganized Debtor and all other parties in interest in this Chapter 11 Case.

## K.     Revocation, Withdrawal, Or Non-Consummation

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other plans of reorganization subject to the consent of the Noteholders' Committee. If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation of the Plan does not occur, then (i) the Plan shall be null and void in all respects, (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to

the Plan shall be deemed null and void, and (iii) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (c) constitute an admission of any sort by the Debtor or any other Person.

**L.    Plan Supplement**

Any and all exhibits, lists, or schedules not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court seven days prior to the date set for the hearing on Confirmation.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours or may be viewed on the Bankruptcy Court's website at <www.nysb.uscourts.gov> Holders of Claims or Interests may obtain a copy of the Plan Supplement upon written request to the Debtor in accordance with Article XIV.M hereof.

**M.    Notices**

Any notice, request, or demand required or permitted to be made or provided to or upon the Debtor or Reorganized Debtor hereunder shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail, or (e) facsimile transmission, and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> AMERICAN BANKNOTE CORPORATION
> 410 Park Avenue
> New York, New York 10022-4407
> Att'n:  Patrick J. Gentile
> Telephone: (212) 593-5700
> Facsimile:  (212) 593-9615

> with a copy to:

> SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
> Four Times Square
> New York, New York 10036-6522
> Att'n: Kayalyn A. Marafioti, Esq.
> Telephone:  (212) 735-3000
> Facsimile:   (212) 735-2000

**N.    Indemnification Obligations**

Except as otherwise specifically limited in this Plan, any obligations or rights of the Debtor or Reorganized Debtor to defend, indemnify, reimburse, or limit the liability of  its present and former directors, officers, or employees pursuant to the Debtor's or Reorganized Debtor's certificate of incorporation, by-laws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such directors, officers, or employees based upon any act or omission related to such present and former directors', officers',

or employees' service with, for, or on behalf of the Debtor prior to the Consummation Date, shall survive confirmation of this Plan and remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date; *provided, however*, that the Debtor's or Reorganized Debtor's obligation to defend, indemnify, reimburse, or limit the liability of any Person covered hereunder shall survive only to the extent that the foregoing obligations may be satisfied from the proceeds of the Debtor's or the Reorganized Debtor's directors and officers liability insurance coverage. Any such obligations that are not satisfied from the proceeds of the Debtor's or the Reorganized Debtor's directors and officers liability insurance coverage shall be discharged.

## O.     Prepayment

Except as otherwise provided in this Plan or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; *provided, however,* that any such prepayment shall not be violative of, or otherwise prejudice, the relative priorities and parities among the Classes of Claims.

## P.     Term Of Injunctions Or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Consummation Date.

**Q.**     **Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (i) the State of New York shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with this Plan and (ii) the laws of the state of Delaware shall govern corporate governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

Dated: New York, New York
        September 12, 2000

AMERICAN BANKNOTE CORPORATION


By: /s/ Patrick J. Gentile
    Patrick J. Gentile
    Senior Vice President - Finance
    Chief Accounting Officer


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Attorneys for American Banknote Corporation


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9362)
    Frederick D. Morris (FM 6564)

Four Times Square
New York, New York 10036-6522
(212) 735-3000